JOHN DEN on the demise of MATTHIAS WILLIAMSON v. DANIEL SNOWHILL.

In an ejectment where the landlord defends the action, without the tenant, who does not appear, it is necessary to prove the defendant or his tenant in possession of the premises.

The plaintiff in ejectment may recover in one action several distinct tracts, and claimed under different titles, if from all, he has been unlawfully ejected by the same defendant,

When two or more persons holding distinct and separate possessions of the premises mentioned in the declaration, are united in the same declaration and jointly enter into the common rule and plead, judgment may be given against them separately, if their separate possessions are found by the jury.

In the action of ejectment, where the judge at the circuit refused to non-suit the plaintiff, on the ground, that it appeared in evidence, that the declaration and notice, were served on a tenant in possession on a day antecedent to the demise stated in the declaration, this court will not set aside the verdict, but will allow the plaintiff on the return of the postea, to amend the declaration.

The demise in the action of ejectment, is a mere creature of the imagination. The purpose of the action is to try the title, and the title only, and hereby is meant not merely the right of John Den to the lease, or to the possession during the fictitious term, but the right of the real parties, the lessor of the plaintiff and the defendant, to the possession of the land : and the forms which have been adopted by the courts are designed to obtain this end and to clear the way of technical difficulties. If the title has been fairly and fully tried, the legitimate object has been effected.

The amendment of the demise by the enlargement or extension of the term is now an every day occurrence. In one instance, after verdict and judgment here, and affirmance in the Court of Appeals, the term, which expired, pending the writ of error, was enlarged, upon argument, by this court.

———

This was an action of ejectment, tried at the Middlesex Circuit. The declaration contained but one count for several tracts of land. The demise was stated to have been made on the thirteenth day of May, 1829 ; under which the plaintiff entered and the ouster was averred to have taken place on the same day. It appeared in evidence on the trial, that the declaration and notice were served on the tenant in possession on an antecedent day, the twelfth day of the same month. The plaintiff having rested, the defendant moved for a non-suit, which was overruled, and a verdict rendered in favor of the plaintiff. On the return of the postea, the defendant by his counsel obtained a rule to shew cause, why the verdict should not be set aside, and the plaintiff by his counsel obtained a rule to shew cause why the declaration should not be amended. Both these rules were ar-

gued at the September term 1831—*Scudder* and *I. H. William-son* argued for the plaintiff and cited *Jackson* v. *Stiles*, 6 *Cowen*, 597; *Adams on Eject.* 184, 5, 6; 1 *John.* 281; 7 *D.* & *E.* 327; 1 *Burr.* 144; *Cowp.* 622; 1 *Burrow*, 54; 2 *Burr* 665; 4 *Burr.* 2449; 3 *Salk.* 8; 2 *Burr.* 1129; 3 *Wilson* 274; 2 *W. Blac.* 940; *Cowper* 841; 1 *Schoales* & *Lefroy* 75; *Right* v. *Horton*, 1 *Starkie's Cases*, 323; *Den* v. *Franklin* & *Sharp*, 2 *South.* 850; 2 *Burr.* 1243; 7 *Cranch*, 471; *Buller N. P.* 107; 4 *Taunt.* 16; 18 *Sergeant* & *Lowber*, 158, *note a*; 17 *ditto* 184; *Cowp.* 454; 8 *East*, 357; 7 *D.* & *E.* 14; 3 *Wils.* 272; 7 *Mass. Rep.* 507; 1 *Peters' Sup. Co.* 183; 5 *D.* & *E.* 425; *Coxe* 146; 2 *Burr.* 936.

*Hamilton* and *Wood* argued for the defendant and cited *Den* v. *Hull*, 4 *Halst.* 297; *Den* v. *Smith*, *Penn.* 710; 9 *Viner* 554; *Cowp.* 454; 5 *Halst.* 274; 7 *D.* & *E.* 327.

The Chief Justice delivered the opinion of the court.

Daniel Snowhill became defendant in this action of ejectment at his own request, in the stead of Oliver Johnston, on whom the declaration and notice to appear were served. Upon the trial a verdict was rendered against him, which he now seeks to set aside.

1. In the first place he alleges that the verdict was given for the plaintiff, without proof that Oliver Johnston was in possession of the demanded premises at the commencement of the action.

The premises in question were denominated on the trial and at the argument here, " the one hundred and fifty acre tract," " the sixty acre tract," and " the lot purchased of Matthias Prast, on which the house of Oliver Johnston in part stood."

In respect to the house and lot, the proof of Johnston's possession was full, explicit and uncontradicted. Sheriff Edgar testified that when he served the declaration in ejectment, Johnston was in possession and had been three, four, five or more years. If then the allegation be true, that the weight of evidence on the point of possession is, as to the other two tracts against the verdict, to set it aside would seem to me an indiscreet exercise of power. The verdict aids the lessor of the plaintiff to recover the house and lot, to which as well as to the two tracts, he established his title on the trial and will not serve him to obtain the latter, if neither Johnston nor the de-

fendant was in actual possession, for if the lessor under color of this recovery should undertake to disturb any other person, this court would, without hesitation, prevent or redress so unlawful a measure. If in point of fact, the jury erred as to the two tracts, I foresee no injury to the defendant. It will not increase the costs of this action a single mill. In an action for mesne profits, although the verdict and judgment would be conclusive evidence against the present defendant as to the title to the mesne profits, yet it would be for such period of time only as on the trial of that action, the defendant should be proved to have occupied those tracts: on which head, proof *aliunde* must be produced, the recovery in ejectment affords none. Nor would the recovery in this action be any evidence in another ejectment to prove the defendant in possession of the premises at the commencement of such other action; and if it could be any evidence of title in such other action, which I neither admit nor deny, it would then be evidence only of what has been in this action so fully established as not to be made the subject of complaint or objection on the part of the defendant.

But was the verdict against the evidence in respect to the possession of these tracts?

Prior to August, 1828, Johnston is proved to have been in possession of the tract of 150 acres. After the deed from the sheriff to the lessor of the plaintiff on the 12th of that month, Johnston went to the tenants on that tract " and informed them that he gave up the land and premises to Matthias Williamson." " But after this, he went and took possession again," and took away some rails. Such, in substance, was the testimony, and if the jury to whom the question was distinctly put, and their duty explained, by the court, were thereby satisfied, I can find no such inconsistency with the truth as will sustain us in impeaching their verdict. The utmost which can justly be said, is, that the evidence is weak, not that it is opposed to the verdict. Johnston was shewn unequivocally to have been in possession a few months before the action and no circumstance appeared to repel the presumption whereby the jury were satisfied.

The possession of Johnston, of the sixty acre tract, was much more doubtful. But we need not examine it, for if Johnston was not, the defendant was, proved to have been in posses-

sion as he avowed and strove to shew. Now it was sufficient
for the plaintiff, if either Johnston or the defendant was in pos-
session. I am aware it has been sometimes, and even°in respect-
able treatises, said there must be proof that the tenant was in
possession where the landlord appears ; but in the leading case
of *Smith on the demise of Taylor* v. *Mann,* 1 *Wils.* 220, deci-
ded in 1748, which settled the doctrine and is cited, approved
and relied on by ·the court in *Goodright* v. *Rich,* 7 *T. R.* 327,
the landlord having defended the action without the tenant, who
did not appear, it was held that it was necessary to prove the
defendant or his tenant in possession of the premises. And
this doctrine, to the weight of authority, adds to the support of
sound principle and irresistible reason.

The application for a new trial cannot be maintained upon
this ground.

2. In the second place, it is insisted this verdict ought to be
set aside, because the premises recovered consist of three par-
cels, situate at a distance from each other, not used together
and in common as one farm, and claimed by the lessor of the
plaintiff under distinct titles, and that one such parcel only and
not more, can legally be recovered in one action of ejectment.

No decision or authority was cited to shew the legal sound-
ness of this position, nor can I yield to the reasoning, however
ingenious, of the defendant's counsel. On the contrary, all ar-
gument, all convenience, all analogy, and some decisions, ap-
pear to me to hold the converse of this doctrine, and to shew
that in one action, the plaintiff may recover several distinct
tracts, and claimed under different titles, if from all he has been
unlawfully ejected by the same defendant.

In point of convenience, why require, in the present instance,
three separate actions, if one will suffice? Why thus increase
the costs, enhance the expenses and protract litigation?

Does any peculiar difficulty arise to the defendant from the
combination in one suit of distinct claims of title? Upon sed-
ulous examination I can discern none, and none was pointed out
to us ; nothing more than every day occurs from an union in
one suit of several distinct causes of action; of which our
books and courts are full, and which is rather encouraged than
discountenanced. Three several slanderous charges, entirely

unlike, circulated in as many different weeks may be redressed in one suit. So may three several batteries perpetrated as many months asunder. Under a single count for money had and received, the plaintiff may prove the receipt of money to his use by the defendant, from divers persons, at divers times, and on occasions wholly disconnected. A bond, a note, a book account, a demand for rent or work done, may be included in one declaration. Is there any less incongruity in these combinations than for a plaintiff to seek by one action to be restored to three several tracts of land, lying in the same township from which he complains that the defendant has on the same day dispossessed him? The description of the premises in the declaration before us, is amply sufficient to cover all the claims of the lessor of the plaintiff; and is not only comprehensive enough, but is so strictly correct, that the proof does not in the slightest degree, militate against it. "Four messuages, four barns, four offices, four gardens, four hundred acres of arable land," and the like quantity of pasture, of meadow, of woodland and land covered with water. In this description there is nothing which is confined to one tract, or to several parcels used in common, nor which justly construed, can raise an expectation that such is the nature of the claim. But it is insisted, one ouster only is charged, and there must, in the nature of the thing, be distinct ousters of distinct parcels. The ouster is thus alleged, " ejected, drove out and amoved the said John Den from his said lands." Now if the description of the " said lands" is sufficient, then the ouster must be charged as comprehensively as necessary, for it is as broad as the description; and there is no repugnancy in the allegation that it was done in a single day. In *Worrel* v. *Beck*, cited in 1 *Wils.* 1, the plaintiff in ejectment recovered different lands in one action. In *Lessee of Bayard* v. *Colefax*, for lands in the district of New-Jersey, the court approved of the principle of *Jackson* v. *Woods*, 5 *John.* 278, and decided accordingly, that when two or more persons holding distinct or separate possessions of the premises mentioned in the declaration in ejectment are united in the same declaration, and jointly enter into the common rule and plead, judgment may be given against them separately if their separate possessions are found by the jury. In *Jackson* v. *Sidney*, 12 *John.* 185 the

declaration contained separate demises by four lessors, and on the trial, the plaintiff offered to shew a title in each of the lessors to separate lots. The evidence was objected to on the ground that the lessors of the plaintiff could not recover on their separate titles. The Supreme Court said " There could be no good reason against their shewing a separate title in each to a distinct part. It cannot subject the defendant to any inconvenience or operate as a surprize upon him. It is a course therefore, that ought to be encouraged as it prevents multiplicity of suits."

These cases, if not precisely in point, are really more liberal to the plaintiff than is requisite to sustain the verdict before us.

3. In the third place, the counsel of the defendant, allege that this suit was prematurely brought, before the cause of action arose. The demise in the declaration is stated to have been made on the 13th day of May, 1829, under which the plaintiff entered, and the ouster is averred to have taken place, on the same day. It appeared in evidence on the trial, that the declaration and notice were served on the tenant in possession on an antecedent day, the 12th of the same month. The defendant insisted that a nonsuit should be ordered. The plaintiff contended that the objection should be disregarded ; that the declaration was amendable ; that the trial ought to proceed and he be allowed if he established his title to the premises in question, to obtain a verdict and to apply to this court on the return of the postea for such an amendment as would remove this formal difficulty. The judge wished to reserve the point ; but the defendant insisting upon an expression of his opinion, he overruled the motion for a nonsuit and directed the trial to proceed. And the matter now comes here, the one party contending that the verdict should be set aside, and the other, that the objection should be disregarded or that an amendment of the declaration should be allowed.

I am of opinion the judge decided correctly, and that an amendment of the declaration ought now to be made.

I propose to examine the subject upon principle and upon authority or precedent.

The demise in this form of action is a mere creature of the imagination. So purely is it a matter of form, that the defend-

Den *v.* Snowhill.

ant will not only unhesitatingly admit any demise the plaintiff thinks proper to allege, but the court will compel him to admit whatever is alleged, or will not allow him to appear in the action or to defend his title to land acknowledgedly in his possession and of which the law therefrom presumes him to be the owner until a better right is shown. The supposed lease is proved only by the confession of the defendant, who admits its existence ; and it must be such an one as is consistent with the title of the claimant of the premises, and which he might legally make. With this qualification, the time is wholly immaterial, if after the title or right of entry has accrued and before the institution of the suit. The purpose of the action is to try the title, and the title only ; and hereby is meant not merely the right of John Den to the lease or to the possession during the fictitious term ; but the right of the real parties, the lessor of the plaintiff and the defendant, to the possession of the land ; and the forms which have been adopted by the courts are designed to attain this end and to clear the way of technical difficulties. If the title has been fairly and fully tried, the legitimate object has been effected. It would be a very profound respect for form, a most submissive deference to fiction, if an error in a matter so merely of form, so purely of fiction, cannot be corrected, but must impede and defeat an investigation of the merits, or if, when the real matters in controversy have been tried, under full and equal opportunities to both parties, and under circumstances as well adapted to the attainment of justice as can ever be expected, the whole is to be dissipated because an error in a wholly fictitious allegation of the declaration, is unexpectedly discovered in the progress of the trial. I would by no means depreciate the value of forms in judicial affairs. They serve greatly to promote regularity, order and security. But a stigma is fastened on the administration of the law, when form becomes more respected than substance, fiction than truth, and when justice is delayed, perhaps irrecoverably defeated, by an objection or difficulty purely technical and founded not merely in form but in fiction. The case before us affords an apt illustration of this remark. No exception has been raised against the verdict, on the score of merits. We are at liberty to say, nay we are bound to say, the plaintiff proved a clear and

satisfactory title, for no complaint is made of any direction of the judge, or of the conclusion of the jury, as to the merits of the controversy.  There was no surprise on the part of the defendant, unless it should have been in the existence of this objection, which seems to have been unanticipated by him and to have presented itself most unexpectedly, upon the examination in chief of the sheriff to shew in whom the possession of the premises was at the service of the ejectment.  And this consideration of surprise appears to me to afford the main circumstance whereby to guide the discretion of the judge in granting or declining the motion for nonsuit on an objection of this nature.  To prevent surprise and its consequences, the judge might properly yield to the motion and let the plaintiff apply at bar to set it aside and amend, subjecting him to the inconveniences resulting from his error.  If there is no surprise or injury to the defendant who is every way prepared to make a full defence, let the cause proceed subject nevertheless, as it must be, to the determination of the court at bar, who if they find it a proper case may amend, and if not, may set aside the verdict and refuse the amendment.  What then is the consequence, if the objection under consideration, should prevail?  The labor and expense of the trial are lost to both parties.  Litigation between them is to be kept alive.  Another trial is to take place, and after another heavy expenditure of time and labor and money, we are to expect them here again if there be any question as to title.  I recollect it was observed by one of the counsel on the argument, perhaps in the ardor of debate, that another jury would not render such a verdict, but I do not recollect that any reasons were given to sustain the remark or by throwing a shadow of doubt or suspicion over the verdict to open a propitious door for formal objections.  But let us enquire a little more closely into this allegation, that the suit was brought before the cause of action arose.  What is in truth the cause of action?  The alleged ouster or John Den from the premises?. By no means.  That serves its purpose and is then forgotten.  Damages are indeed awarded for it, but like the ouster itself they are fictitious or nominal, and are, perhaps, never exacted.  When the sheriff goes to execute the habere facias, he makes no enquiry for John Den nor regards his term,

but delivers the possession to the lessor of the plaintiff. The real cause of action is the detention by the defendant of the property of the lessor after his title has accrued. Now there is no pretence that this action was commenced before the title accrued; and the amendment sought is, in point of time, to be subsequent, not antecedent to the accrual of the title. The amendment, therefore, will not give the plaintiff an action before he was legally entitled to it; and is, in truth, no more than cleaving to the substance instead of the shadow.

I propose now to look into the cases for authority or precedent. It was said on the argument, that no amendment like this, had ever been made here. This court had never gone so far as is now asked. I think it will appear, the court has done quite as much. But if no case, the same in fact, is shown, it follows hence, not that the court should refuse to act, but should act cautiously. It is enough if there be principle to sustain us. The wheels of justice would soon be stopped, if they could move only where they have been before, and where an antecedent track is to be discerned.

The history of the action of ejectment shows that amendments are now freely, where in former times they were sparingly made, and are now allowed almost as a matter of course in instances where they were anciently refused.

The amendment of the demise by enlargement or extension of the term, is now an every-day occurrence. It is done before trial. It is done after verdict. In *Vickars* v. *Haydon, Cowp.* 481, it was ordered by the Court of King's Bench, after verdict and judgment in Ireland, removed into the King's Bench of England by writ of error, affirmed there, and the record remitted to the Irish court. This amendment has been so frequently made in this court, in every stage of the cause, that to refer to the cases, would be an unprofitable expenditure of time. I shall refer to one only, not in print, but of which I have a note taken when it was decided. *Den on the demise of Stevens and others* v. *De Hart, February Term,* 1806. After verdict and judgment here, and affirmance in the Court of Appeals, the term which expired pending the writ of error, was enlarged, upon argument, by order of this court. Now, against an amendment of this nature, all the objections which appeared

so plausible when urged, in the present case, by the defendant's counsel, apply with at least equal force. The term when enlarged after verdict, has not been confessed by the defendant, nor found by the jury. And the objection which has probably more weight than the others, in the effect which may be produced upon the action for mesne profits, has quite as much force in reference to an extension at the termination, as to an addition at the commencement of the term.

The Bishop of Worcester's case, 1 *Salk.* 48, was an ejectment against seven defendants, who entered into the common rule and pleaded to issue. The plea roll was right, but the issue in the *nisi prius* roll was between the plaintiff and five defendants only, which was tried and a verdict rendered for the plaintiff. An amendment was afterwards made. The court said the issue depended on the title, which was not altered by this amendment. In *Doe* v. *Pilkington*, 4 *Burr.* 2447, there had been an entry to avoid a fine, and the demise and ouster were laid before, instead of after the entry, and an amendment of them to a later day was ordered before trial. In *Blackwell* v. *Paton*, 7 *Cranch* 478, the Supreme Court of the United States sanctioned an amendment, by changing to a later day the date of the demise, on trial in the Circuit Court of the United States for the Tennessee district, where an objection to the recovery on account of the demise, had been made. And the Supreme Court decided on common law principles, not on any local doctrines or rules of the state of Tennessee. In *Lion* v. *Burtis*, 19 *John.* 510, upon the trial, a motion for nonsuit was made, because the day of the demise was anterior to the accrual of the lessor's title. The judge did not nonsuit, but reserved the point. The defendant went into his defence and a verdict was found against him. On the motion of the plaintiff, the Supreme Court afterwards allowed an amendment by changing the time of the demise to the 6th, instead of the first of May. In *Jackson* v. *Tuttle*, 6 *Cowen*, 590, the demise was laid on the first day of January, and the title accrued on the 16th of that month. On the trial the defendant moved for a nonsuit. The judge overruled the objection with a view to give the plaintiff an opportunity to move the Supreme Court to amend. And the amendment was afterwards ordered by inserting a day subse-

quent to the accrual of the title, although the defendant had taken a bill of exceptions to the opinion of the judge, and this, among other things, was urged in opposition to the amendment. In *Every* v. *Merwin,* 6 *Cowen,* 366, the court said, it is now the well settled practice not to allow a formal objection to defeat an action, but to suffer the party to amend in any stage of the cause. The court very properly subjoin this qualification, which would, however, be implied, "provided that no jury is thereby sustained by the party opposing the amendment." In *Den* v. *Smith,* in this court, *Penn.* 711, the cause had been carried to the Circuit Court, but not tried, and the plaintiff afterwards moved at bar to amend the demise from May, after which the title had accrued, to July, and it was ordered.

In several of these cases, the demise was laid before the accrual of the title, when consequently, the lessor of the plaintiff had no right or capacity to make such a lease, and necessarily before the plaintiff had any cause of action ; and these appear to me, to be at least as great exertions of power, as to change the time in the manner now proposed.

In *Den* v. *Franklin and Sharp,* in this court, 2 *South.* 850, after a nonsuit on the ground that the lessor at the time of the demise was a feme covert, an amendment was ordered altering the time of the demise and ouster. It does not appear by the report, whether the change was made to an earlier or a later day, If to a later, the observations just now made will apply to it. If to an earlier, it bears a stronger analogy to the case before us.

In connection with these cases, I am unwilling to pass without some notice, although it was not read on the argument, a passage from Adams on Ejectment, who says, "This permission [to amend] is not to be so extended to the injury of the defendant, and therefore the court will not suffer the day of the demise to be altered to a day subsequent to the day of the delivery of the declaration, for this would be to give to the lessor of the plaintiff a right of action which did not subsist at the time of the commencement of the suit." He cites a manuscript case of *Doe* v. *Jeffries, K. B. M. T.* 1814, which, on a pretty careful search, I am unable to find in any of the reporters. I shall only say I can place no reliance on this passage, as it appears to

Den *v.* Snowhill.

contain a mistake, since no one, I think, would seek to change the demise to a day subsequent to the delivery of the declaration.

It is proper also to notice the case of *Den* v. *Hull*, which was cited by the defendant's counsel, and said to be virtually overruled, if the present' verdict is not set aside. The error which was there made the ground of nonsuit, was in a matter of substance, not of form, a variance in the description of the premises demanded, a real, not a fictitious part of the declaration. The power of this court to amend, if the error had been found in the declaration as well as in the transcript was not examined or decided. It does not follow that we are to amend an error in substance because an amendment may be made in matter of form or fiction. That case, therefore, does not interfere with the present.

I shall refer to another case only, which I think directly in point. *Small* v. *Cole and Skinner,* 2 *Burr.* 1159. An action of ejectment was instituted in the first year of George the Third, and the demise was stated to have been made in his 33d year, more than thirty years afterwards, to hold from the quarter day then last past. After verdict for the plaintiff, there was a motion in arrest of judgment. The defendant insisted, the action was brought before the term commenced, and that an ejectment could not be amended. The court overruled the motion and held that even an amendment was unnecessary.

It appears to me there is sufficient of principle and precedent to sustain the course pursued by the judge on the trial, and the application made here for an amendment, which I am therefore of opinion should be ordered, and that the rule to shew cause why the verdict should not be set aside should be discharged.

FORD, J. and DRAKE, J. concurred.

CITED in *Den* v. *McShane,* 1 *Gr.* 39; *Den* v. *Drake,* 2 *Gr.* 528; *Den* v. *Folger, Spencer* 302.