## BLACKWELL v. PATTON & ERWIN'S LESSEE.

1813.
March   6th

*Absent* WASHINGTON, J. and TODD, J.

ERROR to the Circuit Court for the district of Tennessee, in an action of ejectment brought by the lessee of Patton and Erwin, against Blackwell, for 5,000 acres of land, in Bedford county, in the state of Tennessee.

At the trial the Defendant took three bills of exceptions.

The *first* stated, that the Plaintiff produced in evidence, at the trial, a deed of bargain and sale from I. G and Thomas Blount, to whom it was al-

*By the laws of N. Carolina and Tennessee a deed for land in Tennessee, executed in N. Carolina, by grantors residing there in the year 1794, proved in 1797 by one of the sub-*

BLACK-
WELL
*v.*
PATTON &
ERWIN'S
LESSEE.
——————
scribing wit-
nesses before
a judge in N.
Carolina, and
recorded in
1808, in the
proper county
in Tennesee,
is valid, and
may be given
in evidence in
ejectment.
In ejectment
the date of the
demise in the
declaration
may be amend-
ed during the
trial so as to
conform to
the title.
The first grant
from the state
of N. Carolina
upon an entry,
is valid, al-
though issued
upon a dupli-
cate warrant,
the original be-
ing in the
hands of the
surveyor ge-
neral, al-
though a sub-
sequent grant
issue upon the
original war-
rant for other
lands.

leged the land had been granted by the state of North Carolina, while it was a part of that state. The deed from I. G. and T. Blount, was executed on the 9th of October, 1794, to David Allison. On the 29th of September, 1797, it was proved by one of the subscribing witnesses before John Heywood, a judge of the Supreme Court of law and equity, for the state of North Carolina, and registered in Stoke's county.

On the 9th of December, 1807, the hand writing of the subscribing witnesses, who were dead, and of the grantors, was proved before Samuel Powell, one of the judges of the Supreme Court of law and equity of the state of Tennessee, who ordered it to be registered. At November term, 1808, in the Supreme Court of Tennessee, for Mero district, (in which the land lies,) the hand writing of the grantors, and of the subscribing witnesses, was again proved, and on the 28th of December, 1808, the deed was recorded in the proper county. On the trial, (which was in June term, 1810) the Plaintiff offered parol evidence to prove the hand writing of the subscribing witnesses and their death before the month of December, 1807, and also to prove the hand writing of the grantors.

To the admission of this evidence the Defendant below objected, but the Court over-ruled the objection, and admitted the deed in evidence.

The 2d *bill of exceptions* stated that the *Plaintiff* also offered in evidence a deed to his lessors, bearing date *after* the demise laid in the declaration, to the admission of which deed the Defendant objected, but the Court admitted it to be read in evidence, saying the date of the demise was immaterial, or the Plaintiff might amend his declaration, which he did, before the jury retired from the bar, by altering the date of the demise.

The 3d *bill of exceptions* stated, that the Defendant offered evidence to prove, that the original grant or patent from the state of North Carolina to I. G. and Thomas Blount, was issued upon a duplicate warrant, while the original warrant was in the hands of the surveyor general; and that I. G. and Thomas Blount afterwards obtained another grant or patent from the state

of North Carolina for other lands upon the original warrant. To the admission of this evidence, the Plaintiff objected, and the Court rejected it.

MARTIN, *for the Plaintiff in error.*

1. The deed from I. G. and T. Blount to Allison, was not proved and registered according to the laws of North Carolina, or of Tennessee, so as to be valid.

The law of North Carolina, 1715, ch. 30. § 5. p. 18. requires every deed to be acknowledged, or proved, in open Court, or before the chief justice, and registered, within 12 months after its date, in the county where the land lies. This deed bears date the 9th of October, 1794, was never acknowledged nor properly proved, and was not registered till the 28th of December, 1808.

By the law of England, a deed of bargain and sale is inoperative, until enrolled; in the same manner as a deed of feoffment does not operate until livery of seizen. A deed by a joint-tenant—a deed for the reversion and payment of rent to the bargainor are good before enrolment. The bargainee is not *seized* before enrolment, and if he die before enrolment, his wife is not entitled to dower, although when enrolled it relates back to its date. 1 *Bac. Abr.* 473. 2 *Bl. Com.* 311. 3 *Wood's Conveyancer,* 32 to 34.

2. The Court ought not to have permitted the deed to the lessors of the Plaintiff, dated after the demise, to be given in evidence on that declaration, nor to have suffered the Plaintiff to amend his declaration after the jury was sworn. 2 *Str.* 1086, *Beddington v. Parkhurst. Runnington,* 87. *Bul. N. P.* 105, *Basset v. Basset.*

Courts have gone no further in permitting amendments in ejectment, at the trial, than to enlarge the term which had expired, or to correct grammatical errors. Although the declaration is a fiction in form, yet what is of substance must be truly set forth.

3. The act of North Carolina, (1783, ch. 2, p. 322, § 9, 10 and 11) which prohibits the issuing of a grant

upon a duplicate warrant, was in force when this warrant was issued. It was a fraud upon the state, for only one warrant was paid for, and yet it was made to operate as two.

CAMPBELL, *contra.*

1st. There were other laws of North Carolina, and of Tennessee, extending from time to time the term for registering deeds, so that any deed, even of 50 years standing, may now be registered.

The probate of the deed, before Judge Haywood, on the 29th of September, 1797, brings the deed within the act of Tennessee, 1809, Nov. 23, ch. 100, § 4, p. 129, by which it is enacted, " That all deeds, or mesne " conveyances, for land within this state, which shall " have been made and executed out of the limits of this " state, and shall have been proven by one or more of " the subscribing witnesses thereto, or acknowledged " by the grantor or grantors, before any judge of any " Court in another state, or before the mayor of any " city or corporation in another state, and shall have " been registered in this state in the county where the " land or any part thereof lies, within the time required " by law for registering the same, such probate and re-" gistration shall be good and sufficient to entitle the " same to be read in evidence in any Court within this " state."

But the probate and the admission to registration is conclusive on this point.

To show that the term for registering deeds had been kept open until the present time, he cited the following laws : *Iredell's revisal of the laws of North Carolina,* p. 83, 1744, c. 1, § 2, 3—p. 173, 1756, c. 6, § 2, 3—p. 196, 1760, c. 6, § 2—p. 213, 1764—p. 224, 1766—p. 246, 1770—p. 269, 1773—p. 289, 1777—p. 424, 1782—p. 487, 1784—p. 590, 1786—p. 640—1 *Sess. a. a.* p. 665, 668. *Laws of Tennessee,* 1794, c. 22, § 3. *id.* 1796, 1797, 1801, c. 20, § 1—1803, c. 57—1805, c. 16, § 1—1807, c. 85, § 1, 2—1809, c. 100, § 4.

2d.-MARSHALL, *Ch. J.* Pass over the 2d point.

CAMPBELL. 3d. This was the first grant which issued upon this entry. It was good when it issued, and cannot be invalidated by a subsequent grant on the same warrant. Both cannot be void. If either, it must be the last.

BLACK
WELL
*v.*
PATTON &
ERWIN'S
LESSEE.

. *March 11h....*MARSHALL, *Ch. J.* delivered the opinion of the Court as follows :

The writ of error in this case is brought to reverse a judgment obtained by the Defendants in error against the Plaintiffs in an ejectment brought in the Circuit Court of West Tennessee. At the trial, the Plaintiffs in that Court offered in evidence in order to make out their title, a deed bearing date the 9th of October, 1794, from J. G. Blount and Thomas Blount, of North Carolina, to David Allison, of Philadelphia, 'which deed was recorded in the county in which the lands lie on the 28th day of December, 1808. The Defendants objected to the admission of this deed, and excepted to the opinion of the Court over-ruling the objection.

The original law requiring the enregistering of deeds, passed in North Carolina, (then comprehending what is now the state of Tennessee,) in the year 1715. This act requires that the deed shall be acknowledged by the vendor, or proved by one or more evidences upon oath, either before the chief justice for the time being, or in the Court of the precinct where the land lies, and registered by the public register of the precinct where the land lies within twelve months after the date thereof. It was afterwards enacted, that the deed might be registered by the clerk of the county in which the land lies, and the time for the registration of deeds was prolonged until Tennessee was erected into an independent state, after which the time for enregistering of deeds continued to be prolonged by the legislature of that state.

In the year 1797, the legislature of Tennessee enacted a law, declaring that deeds made without the limits of the state, should be admitted to registration on proof that the same was acknowledged by the grantor, or proved by one or more of the subscribing witnesses in open Court, in some one of the Courts of the United States, and on no other proof whatever, except where the party holding such deed shall have the same proved

BLACK-
WELL
v
PATTON &
ERWIN'S
LESSEE.

or acknowledged within the limits of the state of Tennessee, agreeable to the mode heretofore in force and use in that state.

It is contended by the counsel for the Defendants in error, that the deed being recorded in the proper county, the judgment of a competent Court has been given on the sufficiency of the testimony on which it was registered, and that judgment is not examinable in any other tribunal. But this Court is not of that opinion. The proof on which a deed shall be registered is prescribed by law, and it is enacted that the deed shall not be good and available in law, unless it be so proved and recorded. The evidence therefore is spread upon the record, and is always attainable. The order that a deed should be admitted to record is an *exparte* order, and might often be obtained improperly if the order was conclusive. It is believed to be the practice of all Courts, where the law directs conveyances to be recorded, and prescribes the testimony on which they shall be recorded in terms similar to those employed in the act of North Carolina, to hold themselves at liberty to examine the proof on which the registration has been made.

This deed in the present case was proved before judge Haywood, in North-Carolina, by one of the subscribing witnesses thereto, on the 29th of September, 1797, and registered in Stoke's county, in North Carolina.

On the 9th day of December, 1807, the hand-writing of the subscribing witnesses, who were dead, and of the grantors, was proved before Samuel Powell, one of the judges of the Supreme Court of law and equity, in the state of Tennessee, who thereupon ordered the deed to be registered; and afterwards in November term, 1808, the same proof was received in open Court in the county where the lands lie, and was ordered to be registered by that Court, which order was executed.

This Court is of opinion that the deed was not sufficiently proved according to the then existing law. The probaty before judge Haywood was not sufficient to prove it as a deed made out of the state, because the act of 1797 required that such probate should be made in open

Court. The proof made before judge Powell, and in open Court, is insufficient, because it was not made by a subscribing witness.

BLACK-<br>WELL<br><i>v.</i><br>PATTON &<br>ERWIN's<br>LESSEE.

On the 23d of November, 1809, the legislature of Tennessee passed an act, declaring that all deeds for land within the state, made out of the state by grantors residing without the state, and " which shall have been proven by one or more of the subscribing witnesses thereto, or acknowledged by the grantor or grantors before any judge of any Court in another state, or before the mayor, &c. and shall have been registered in this state in the county where the land, or any part thereof lies, within the time required by law for registering the same, such probate and registration shall be good and sufficient to entitle the same to be read in evidence in any Court within this state."

This act appears to the Court to cover the precise case. This was a deed for land lying within the state of Tennessee, made out of the state by grantors residing without the state, which had been proven by one of the subscribing witnesses thereto before a judge of a Court of another state, and had been registered in the county where the land lay within the time required by law for registering the same.

This act gave complete validity to the registration made in December, 1808, and entitled the deed to be read in evidence. It looked back, in order to affirm and legalize certain registrations made on probates which did not satisfy the laws existing at the time, but which the legislature deemed sufficient for the future.

In tracing his title, the Plaintiff in the Circuit Court gave in evidence a deed to himself which bore date posterior in point of time to the demise laid in the declaration of ejectment. The Defendant, on this account, objected to the deeds going in evidence to the jury, but the Court over-ruled the objection, and declared the date of the lease to be immaterial, and that it should be overlooked, or the plaintiff have leave to amend. The declaration was amended by striking out the date of the lease mentioned in the declaration, and inserting a date posterior to the conveyance made to the Plaintiff.

BLACK-
WELL
v.
PATTON &
ERWIN'S
LESSEE.

In an ejectment the lease is entirely a fiction invented for the purpose of going fairly to trial on the title. Courts have exercised a full discretion in allowing it to be amended. A Plaintiff has frequently been allowed to enlarge the term when it has expired before a final decision of the cause. Between making the term extend to a more distant day, and commence at a later day, the Court can perceive no difference in substance. They are modifications of the same power intended to effect the same object; and although not precisely the same in form, the one is not greater in degree than the other. The amendment therefore was properly allowed.

Although this Court is of opinion, that the Circuit Court erred in saying, that it was unnecessary to prove a title in the lessor of the Plaintiff at the date of the demise laid in the declaration, yet it is an error which could not injure the Defendants, or in any manner affect the cause. The amendment being allowed, the question whether the deed could have been read in evidence had the amendment not been made becomes wholly immaterial, and this Court will not notice it.

For the purpose of showing that the original grant was void, the Defendant then offered evidence to prove, that it was founded on a duplicate warrant issued by John Armstrong, entry-taker of western lands for the state of North Carolina, in the year 1798, the original warrant being still in the hands of the surveyor general of the middle district within which the original entry was situated; and that the grantees, after the said grant was issued, obtained the original warrant from the surveyor general, and procured another grant founded thereon for other lands. To the admission of this testimony, the Plaintiff objected, and the Court sustained the objection. To this opinion also an exception was taken.

By the laws of North Carolina, under which this entry was made, any citizen was permitted to enter with the entry-taker any quantity of land not exceeding 5,000 acres, which it was his duty to describe specifically. After the expiration of three months the entry-taker was to give him a copy of the entry, with a warrant to the surveyor to survey the land. As no other

land than that described could be surveyed under this entry and warrant, while the land really entered remained vacant, it was entirely unimportant whether the survey was made under the first or a second copy of the entry. If indeed two persons claimed the same land, under different surveys and grants, the elder patentee would of course hold the land at law. But no person other than such subsequent patentee, or one claiming under him, could contest the elder grant. To the state, and to all the world, it was perfectly immaterial when this grant issued, whether it emanated on the first copy of the entry, or on any other copy, as no other use had then been made of the first copy, and this grant was unimpeachable.

In 1784, a power was given to remove entries when they were made on lands previously granted or entered. But certainly this would not extend to the removal of an entry, and the survey of other lands on a copy thereof, which entry had already been executed and carried into grant, either on the first or on any other copy. The face of the grant gave no notice that it had issued on a second copy of the entry, and as the case was not provided for by law, it is not improbable that every copy given by the entry-taker would bear the same appearance. There was nothing which would indicate to a purchaser that some future fraud might possibly be practised whereby another grant might be obtained, and which might caution him, that a title, good to every appearance, was infected by a circumstance into which the law did not expect him to inquire. Had no subsequent patent issued in this case for other lands, it would not be contended that this patent was either void or voidable, and it is perfectly clear that a patent which was valid when issued, never can be avoided in the hands of a fair purchaser, by a subsequent fraud committed by the original patentee. It is the subsequent patent which injures the state, and which is obtained by fraud. It is the subsequent patent, if either, the validity of which is questionable.

In the year 1795, an act passed directing the books of entry-takers to be delivered to the clerks of the several county courts in which such entry-takers respectively resided: And in 1796, an act passed prescribing the

BLACK-
WELL
v.
PATTON &
ERWIN's
LESSEE.

BLACK-
WELL
*v.*
PATTON &
ERWIN'S
LESSEE.

manner in which duplicates might be obtained, where the warrants were lost, and others had not been issued, while the books remained with the entry-takers.

It is strongly to be infe.red, not only from the language of this act, but from the circumstance that no provision is made for duplicates to be issued by the entry-taker in future cases of lost warrants, that every copy of an entry which was granted by the entry-taker, was considered as an original, and as an equal authority to the surveyor to survey the land entered. The entry being once executed, it was his duty not to execute it again.

This act provides, that where duplicates shall issue from the clerk, by order of the Court, the surveyor shall note the fact in his plat, and it shall appear on the face of the grant, that the same is issued on a duplicate, and shall be liable to become null and void, if it shall appear that a grant had been obtained on the original warrant.

This act applies only to grants issued on duplicates obtained in conformity with its provisions, and would seem to respect only the junior patent. It cannot affect the grant in this case, which was issued before its passage. But it affords strong reason for the opinion, that the state of North Carolina did not purpose to impeach its own grants, unless they conveyed notice to the world that they were impeachable, and even then they were voidable, not void. An individual not claiming under the same entry, could not avail himself of their liability to be avoided.

It is the opinion of the Court that there is no error, and that the judgment be affirmed.