New-London,
July, 1841.
——————
Buddington
*v.*
Stewart.

———◆———

|    |     |
|----|-----|
| 14 | 411 |
| 66 | 87  |
| 14 | 411 |
| 73 | 557 |
| 73 | 558 |

## KELLOGG *against* DENSLOW.

It is never necessary for the vendee of personal property to return it to the vendor, or give him notice of its defects, except to enable the vendee to withhold or recover back the price, upon the actual dis-affirmance of the contract, and the revesting of the title in the vendor. But in all cases of fraud or warranty, where the vendee has the right of dis-affirmance, he may keep silence, and bring his action in affirmance of the sale, either for the fraud, or upon the warranty.

Therefore, where *A* agreed to furnish *B* with sundry articles of machinery, to be delivered subsequently, and to be free from defects; *A* delivered the articles accordingly, which were received and used by *B*, for nearly a year, without notice to *A* of any defects therein; in an action brought by *B* against *A* on the warranty, claiming damages for defects in the articles at the time of delivery, it was held, that the effect of *B's* not having given notice of such defects in a reasonable time, was, that he had thereby affirmed the contract, but such omission constituted no defence to the action, which assumed the subsistence of the contract.

Where the declaration, in an action by the vendee against the vendor, to recover damages for defects in the articles sold, stated a sale by the defendant to the plaintiff of a condenser, for 75 dollars; and the proof was of a contract for the sale of sundry articles, including a condenser, for 445 dollars, made up in part of 10 dollars for the transportation of the whole; in which contract the price of the condenser was set at 75 dollars; it was held, that there was a fatal variance.

Where another count of the declaration in such action stated a contract for the delivery of the articles sold, in six weeks from the 10th of *September*, 1838; and the proof was of a contract for the delivery of such articles in *about* six weeks from that time; it was held, that there was a fatal variance. [One judge dissenting.]

New-London,
July, 1841.

Kellogg
v.
Denslow.

THIS was an action of *assumpsit* upon the warranty of certain articles of machinery, sold by the defendant to the plaintiff.

The declaration consisted of three counts. In the first, the plaintiff alleged, that on the 10th of *September*, 1838, at *East-Lyme* in the county of *New-London*, the plaintiff was about to commence business as a manufacturer of satinet cloth, at his mill or factory in that town; that he was then in want of certain additional machinery, for his said mill or factory, to enable him to carry on the business successfully and with profit, *viz.* one jack of 120 spindles, one picker of 18 inches in width, and one vibrating condenser, (with the cards attached to it,) and 72 feet of machine cards; which machinery the defendant, upon the day last-mentioned, in consideration of the sum of 445 dollars, including in said sum 10 dollars for transportation, to be paid therefor by the plaintiff to the defendant, as soon as said contract should be completed, agreed to furnish the plaintiff, in six weeks from the 10th day of *September*, 1838; and the defendant then and there agreed and promised the plaintiff, that said machinery, and every part thereof, should be complete and first-rate, made of good materials and workmanship, and delivered at said mill or factory of the plaintiff, and put in complete operation, (except setting said 72 feet of cards) the plaintiff having things in readiness at said mill or factory to receive said machinery, and finding and keeping the team and boarding the help of the defendant, while said machinery should be putting up, and furnishing such non-mechanical help as might be necessary as to lifting, &c.; that said agreement being so made, in consideration thereof, and that the plaintiff, at the special instance and request of the defendant, had undertaken and faithfully promised the defendant to perform said agreement, in all things on his part to be performed, the defendant undertook and then and there faithfully promised the plaintiff to perform said agreement, in all things on his part to be performed; and although the plaintiff has at all times from the making of said agreement, well and truly performed the same, in all things on his part to be performed, according to the tenor, effect and meaning thereof, and had things in readiness to receive said machinery, when the same arrived at said mill, and found and kept the team and boarded the help of the

defendant, while said machinery was putting up, by the de-

fendant, and furnished such non-mechanical help, as was ne- cessary, for lifting &c., and has also well and truly paid the defendant for said machinery, according to the prices and agreement aforesaid; yet the defendant, not regarding said agreement, nor the promise and undertaking, so by him made, in manner and form aforesaid, but contriving and fraudulent- ly intending to injure the plaintiff in this respect, has not, (al- though often requested so to do,) furnished and put in com- plete operation for the plaintiff, at his said mill, either in six weeks from the 10th of *September*, or at any time before or since, said machinery, complete and of the first-rate kind, and made of good materials and workmanship, delivered at said mill or factory of the plaintiff and put in complete operation, (except as in said agreement is excepted,) but, on the con- trary thereof, after the making of said agreement and his said promise and undertaking, *viz.* at *East-Lyme*, on the 25th day of *November*, 1838, the defendant caused to be transported to said mill or factory of the plaintiff, (together with said other machinery above-mentioned) a certain pretended vibra- ting condenser, so called, which was not complete and of the first-rate, and was not made of good materials and work- manship; and the defendant did, then and there, attempt to put the same in working condition and operation, but the same was so badly, unskillfully and imperfectly made and constructed, and of such bad materials and workmanship, that the same would not, and could not be made to perform the work well for which it was designed; that said machine was coarse, shackling and made of bad materials, and could not be made to manufacture roping, for which it was bought and intended; that the roping, instead of coming out from said machine round, as it ought to do, was flat and more in the shape of a ribin than a roll; by means whereof, said condenser has been, and is, of no use to the plaintiff, but, on the contrary, has been of great damage and injury to him, in his said business.

In the second and third counts the plaintiff declared upon an agreement of the defendant to furnish a vibrating con- denser, to be put up and used in the plaintiff's mill, for the sum of 75 dollars, to be therefor paid; which sum the plain- tiff paid accordingly; the defendant warranting such con-

New-London, denser to be complete and first-rate, made of good materials,
July, 1841.
and constructed so as to work well in the plaintiff's mill, &c.
Kellogg     as stated in the first count. The breach alleged in these
v.
Denslow.   counts was coextensive with the warranty.

The cause was tried at *Norwich, March* term, 1841, before *Waite, J.*

The plaintiff, to prove the contract set up in the several counts of his declaration, read in evidence the correspondence which had passed between the parties on the subject; which constituted all the evidence in relation thereto.

The first letter was from the plaintiff to the defendant, dated *August* 30th, 1838, enquiring the lowest price for which the defendant would furnish the plaintiff with certain machinery, including a first-rate jack of 120 spindles, a first-rate picker, and a vibrating condenser, all to be complete, delivered at the plaintiff's mill, and set up, ready to be set at work.

To this the defendant replied, by a letter dated the 3rd of *September*, 1838, stating his terms.

To this the plaintiff replied, by a letter dated *September* 7th, 1838, suggesting some modification of the order and of the terms.

Then followed the defendant's letter of *September* 10th, 1838, which was as follows: " Sir, your favour of the 7th is at hand, and noticed. In reply, I say, that I will furnish the articles named, at the price suggested in your letter; that is, a jack, 120 spindles, a picker, a condenser, and 72 feet cards; delivered at your place, and put in operation, except setting the cards; you boarding help and keeping team, the time necessary to be there, and furnishing such non-mechanical help as may be necessary, which will not be much."

To this letter the plaintiff replied, in a letter dated the 14th of *September*, 1838, as follows: " Sir, Your favour of the 10th inst. is received; in which you accept the proposals in my letter of the 7th inst. I therefore consider the contract confirmed, as follows—a jack, 120 spindles; a picker, 18 inches; a vibrating condenser, to fit my carding machine; and 72 feet of machine cards, as *per* bill in my letter of the 7th inst.; all complete, of the first-rate, and all delivered and set in operation, except setting the cards, for the sum of 445 dollars, cash, in about six weeks from the 10th instant; myself board-

ing your help, team, &c., as mentioned in your letter of the 10th instant."

*New-London, July, 1841.*

*Kellogg v. Denslow.*

On the 5th of *December*, 1838, the plaintiff wrote to the defendant as follows : " Mr. *Whiting* [the defendant's agent to put up the machinery] has completed the jack, and I have paid over to him the amount of your bill, except deducting 3 dollars, for twice going to *Lyme* ferry for cards, picker, &c. I have now every part ready for operation, except the looms."

In another letter from the plaintiff to the defendant, dated *December* 28th, 1838, the former remarks : " Mr. *Whiting* did not do justice to the condenser. He did not speed the rubbers high enough, by one third or more ; and it cost me five or six dollars to find out the difficulty and get it regulated."

The next letter is from the plaintiff to the defendant, dated *October* 7th, 1839, containing the following remarks : " It is with extreme regret, that I am compelled to enter my complaint and protest to you against the condenser you furnished me for a first-rate article, and for which you received a first-rate price. It never has yet done any work decently, or any thing like as well as others of the same kind, or even the tube condensers, either on coarse or middling qualities of wool ; and it is decided, by good judges, both builders and operators of the same kind of machinery, that it never was, or can be, made to do good work. Besides, it is not made in a workman-like manner, but ill constructed and of poor materials ; and instead of rolling the wool into roping, it flattens it into ribins. The whole vibration of the rubbers or rollers, as they were left, was but about one inch, or half inch, each way. There has already been more expense upon it, to find the cause of its not working, than it is worth ; and although it works some better than when it was left, to be in complete running order, yet it is far from being fit for use. I have abundant proof of what I assert ; and in consequence, I have suffered extremely, both in mind and cash, continually, ever since I have been trying to work it. The real damage or loss in cash that I have actually sustained, in consequence of the entire failure of the condenser, to say nothing of the quarrels, perplexity and vexations it has occasioned, is estimated, on sound and good evidence, to be between ten and twelve hundred dollars ; and in justice to myself and others,

*New-London,*
July, 1841.
————
Kellogg
*v.*
Denslow.

I must call on you to take it away, and place a first-rate one in its place, as you at first agreed to do, and make good the damage it has been to me, or I must seek redress in some other way."

The last letter was one from the defendant to a third person, dated *October* 9th, 1839, which is no otherwise material than as it shows the receipt by the defendant of the plaintiff's letter of the 7th of *October.*

The defendant claimed, and prayed the court to instruct the jury, that this evidence did not support either count, on account of the variances between the contract as proved and the contract alleged in the declaration; but the court did not so instruct the jury.

It further appeared in evidence, that the condenser in question, was delivered to the plaintiff, on the 25th of *November,* 1838; and that no notice was given to the defendant of the defects in it, until the 7th of *October,* 1839.

The plaintiff, to excuse his omission to give earlier notice, introduced evidence to show, that at the time of the purchase, he was unacquainted with the business of manufacturing; and although he continued to use the machine, during the greater part of the time until notice was given, yet being inexperienced in the business, he was ignorant of the difficulty in the operation of the condenser, and did not discover it until the latter part of *September,* 1839, when, having employed an experienced machinist to put the machine in proper condition, he was informed, that it was so badly and imperfectly constructed, that it could never be made to operate well. He therefore gave notice to the defendant, in the manner stated in his letter of the 7th of *October,* 1839.

The defendant claimed, that it was the duty of the plaintiff, as soon as he discovered the defects in the condenser, to give notice to the defendant; and that an omission on the part of the plaintiff to give such notice, within a reasonable time after such defects had been discovered, would exonerate the defendant from all liability for damages, on account of those defects; that the facts of receiving the condenser by the plaintiff at his mill, and paying for it, when erected; keeping it in operation until the 7th of *October,* 1839, without any complaint or notice of any defects to the defendant, the parties having had, in the mean time, a correspondence with

each other, upon other matters, together amounted to an ac- <span><em>New-London,</em><br/>July, 1841.</span>
ceptance of the machine by the plaintiff, and a waiver of any
defect which might have existed; and the defendant prayed <span>Kellogg<br/><em>v.</em><br/>Denslow.</span>
the court so to instruct the jury. The court did not instruct
the jury in the manner requested by the defendant; but, upon
this part of the case, submitted the questions to them as
questions of fact, informing them, that if they found from
the evidence before them, that there had been an acceptance
of the condenser by the plaintiff, in fulfillment of the contract,
or there had been a waiver by him of the defects in it; in
either case, their verdict must be for the defendant; and that
the length of time which the plaintiff kept the article with-
out complaint, was a circumstance material, in considering
whether there had been an acceptance or waiver.

The jury returned a verdict for the plaintiff; and the de-
fendant moved for a new trial for a misdirection.

*Rockwell* and *Foster*, in support of the motion, contended,
1. That the court should have instructed the jury, that the
evidence did not support either count in the declaration. In
the first place, it did not support the second and third counts.
The proof is of a contract entire and indivisible, for the pur-
chase of divers articles of personal property, at a certain
price for the whole. The second and third counts are each
on a contract for the purchase of one only of these articles,
at a fractional part of the whole price. There is an entire
absence of legal identity between the *allegata* and *probata.*
*Symonds* v. *Carr*, 1 *Campb.* 361. Nor is the price correctly
alleged. Ten dollars was to be added to the list of prices
given by the defendant, for transportation. A portion cer-
tainly, if not the whole, of this amount, is to be added to the
price of the condenser. The sum stated, *viz.* 75 dollars, is
not, therefore, the price which was to be paid.

Secondly, the first count, though it specifies correctly the
different articles which form the subject of the contract, is
still materially variant from the contract proved. In this
count it is alleged, that the articles contracted for were to be
delivered in six weeks from the 10th of *September*, 1838.
By the contract proved, they were to be delivered in *about*
six weeks from the 10th of *September*, or in a reasonable
time thereafter. The time alleged is definite; that pro-

*New-London,*
*July, 1841.*

Kellogg
*v.*
Denslow.

ved is indefinite. Whatever is to be done *about* a given time, is clearly not to be done *at* that time.   1 *Stark. Ev.* 373. 375.   *Bristow* v. *Wright, Doug.* 665.   *Anon.* cited *Doug.* 666.   *Tate* v. *Wellings,* 3 *Term Rep.* 531.   *Arnfield* v. *Bate* & al. 3 *Mau. & Selw.* 173.   *Penny* v. *Porter,* 2 *East* 2.   *Willoughby* v. *Raymond,* 4 *Conn. Rep.* 130.   *Curley* v. *Dean, Id.* 259.   *Shepard* v. *Palmer,* 6 *Conn. Rep.* 95. [Some variances between the allegations and the evidence as to the quality and character of the machinery, were also pointed out, but not much insisted on.]

2. That if the purchaser of a personal chattel, warranted to be of a particular description, omit to give notice of any defect which constitutes a breach of the warranty, within a reasonable time after the delivery, the chattel being retained and used by the purchaser after such reasonable time has elapsed, there is a waiver of any claim for damages, and the vendor is exonerated from any liability.   *Fisher* v. *Samuda* & al. 1 *Campb.* 193.   *Hopkins* v. *Appleby,* 1 *Stark. Ca.* 477. In this case, the condenser was received by the plaintiff, set up in his mill, put in operation and paid for, about the 25th of *November,* 1838.   It continued in operation, for most of the time, until the 7th of *October,* 1839, during all which time the plaintiff made no complaint.   The jury should have been instructed, that these facts constituted an acceptance of the article and a waiver of any defect.

The want of notice in this case cannot be dispensed with, on the ground of an *express warranty ;* for this is not a case of that character.   The plaintiff ordered articles of a specified description; and the defendant forwarded the articles under the order.   If there was any warranty, it was merely an *implied* one.   The rule is different here from what it would be in case of an express warranty.   *Percival* v. *Blake,* 2 *Car. & P.* 510.   *Cash* v. *Giles,* 3 *Car. & P.* 407. *Milner* & al. v. *Tucker,* 1 *Car. & P.* 15.   *Groning* & al. v. *Mendham,* 1 *Stark. Ca.* 257.

*Strong,* contra, insisted, 1. That a new trial ought not to granted, on the ground of variance.

In the first place, it should be borne in mind, that jurists are now satisfied that the doctrine of variance has been carried too far.   The courts are receding from the former strictness on this subject.   They are only anxious to secure the

*New-London,*
July, 1841.
———————
Kellogg
*v.*
Denslow.

great objects of the law of variance, *viz.* to give reasonable notice of the plaintiff's claim, so that the defendant may know how to prepare his defence, and that the record may shew what rights have been decided, and protect those rights.

Secondly, the first count at least, (and that is enough,) is supported by the evidence. The contract was perfected, by the plaintiff's letter, on the 14th of *September*, 1838, in which he closes with the terms stated by the defendant in his letter of the 10th. The variance principally relied on, is, that the declaration states a contract to deliver the machine in six weeks from the 10th of *September*, whereas the correspondence shews a contract to deliver it in *about* six weeks. The word *about* creates all the difficulty. But this word had no legal effect. It includes in its import the precise time. But there is another and more decisive answer. That part of the contract which relates to the delivery, has been performed, and the plaintiff does not complain of any breach in this respect. The time of delivery, therefore, does not come in question here. Whether the machinery was to be delivered in six weeks, or six days, is perfectly immaterial, since it has been delivered, and this to the satisfaction of the plaintiff. And he was not obliged to state any more of the contract than he claims to have been broken. This is familiar and well settled law.

Thirdly, the variance, (if any,) as to the quality and character of the machinery, is immaterial. Here is no difficulty as to the identity of the subjects.

2. That no notice to the defendant of the defects in the condenser, was necessary. Notice *is* necessary only where the contract of sale is *rescinded.* But here the plaintiff seeks to *enforce* the contract. If a man has agreed to do certain things, and is sued on the contract for not doing them; has the plaintiff any thing more to do than to prove the contract and the breach? Is it necessary, in the absence of any stipulation as to *trial* of the article furnished, to give notice to the contractor, that he has not performed his contract? Clearly not, upon principle; and the cases of a different aspect, are mere rulings at *Nisi Prius.*

3. That the charge to the jury as to an *acceptance* of the article and a *waiver* of defects, was liberal towards the defendant, and legally unexceptionable. These were matters

New-London,
July, 1841.

K no g
v.
Denslow.

of *fact* for the jury to decide, upon the evidence. There is no rule of law, prescribing, *as matter of law*, what sort of use, or what length of time, shall constitute an acceptance or a waiver.

SHERMAN, J. This is an action to recover damages for a breach of warranty, in the sale of an article of machinery, called a condenser, bought by the plaintiff of the defendant and alleged to be defective.

One ground on which the defence was rested, in the court below, was, that the plaintiff, on discovering the defects in the condenser, should have given the defendant notice of them, in a reasonable time ; and by neglecting to give such notice, had waived all objection on account of these defects, and was therefore barred of a recovery in this action.

This defence admits that the plaintiff has sustained the injury of which he complains, but assumes that by his silence, he has voluntarily relinquished the right to recover a compensation.

There are three conditions in which the purchaser of a personal chattel may have remedy against the seller. These it may be proper to state, in order to test the validity of this defence. They are

1. Where there is a warranty.

2. Where there is fraud on the part of the seller.

3. Where the sale is on condition, express or implied, that the purchaser, in a certain event, may disaffirm the sale and return the article.

But if the sale is absolute, *bona fide*, without warranty and for a specific price, the vendee has no remedy for defects in the property. *Dean* v. *Mason*, 4 *Conn. Rep.* 428.

The actions in which these remedies are sought, by the vendee, are either where he is sued for the price of the article, or sues the vendor for its defects, or to recover back the price, when he has paid for it.

If the property is warranted, and the action is by the vendor against the vendee to recover the price, the defects may be shewn in mitigation of the demand. By proving the warranty and the defects, the vendee may reduce the demand, by a deduction equal to the loss he has sustained by the violation of the warranty. This ground of mitigation is authorized by

law merely to prevent circuity of action. *Cormack* v. *Gillis*, *New-London, July, 1841.* cited 7 *East*, 480, 1 ⬛ *King* v. *Boston, Id.* 481. note (*a.*) *Street* v. *Blay*, 2 ⬛ *Id.* 456. Where an action is on a quantum valebat ⬛ *tum meruit*, no price being agreed, the defects in the article, in a suit against the vendee for the price, may be given in evidence, on the ground that they are directly involved in the issue, as shewing the *worth* of the property for which the suit is brought. *Busten* v. *Butter*, 7 *East*, 479. And in the absence of any warranty or fraud, if no price is agreed, the only opportunity for the vendee to shew the defects in the property, is, when he is sued for its value. But if the price is agreed by the parties, and there is no fraud or warranty, the defects in the property cannot be proved, in a suit against the vendee for the price, to diminish the damages; for, the same reasons which preclude a recovery in a cross action, where there is neither fraud nor warranty, apply equally to this defence.

*Kellogg v. Denslow.*

And when the vendee is sued for the stipulated price, he may prove, that by the terms of the contract, he had the right, expressed or implied, to rescind it, and return the property. When this defence is made, he is bound to shew, that the event on which he was entitled to disaffirm the contract, has actually happened, and that notice has been given to the plaintiff, in a reasonable time, that the contract was rescinded, and of the reasons for which it was done. After these events have happened, and notice is duly given that the contract is rescinded, the vendor may take back the property, but cannot recover the consideration; but the vendee, if he has paid it, may recover it back. Return of the property to the vendor, or notice of its defects, is never necessary, except to enable the vendee to withhold, or recover back, the price, upon the actual disaffirmance of the contract, and thereby revesting the title in the vendor. In most cases, notice to the vendor, is sufficient; for it is, in general, the duty of the vendor himself to take the property back, when the vendee has notified him of his refusal to keep it, for sufficient reasons; unless the terms of the contract or other circumstances make it the duty of the vendee to redeliver it to the vendor.

In *Towers* v. *Barrett*, 1 *Term Rep.* 133. the condition was *expressed* in the contract. It was agreed, that if the wife of the vendee did not approve a horse and chaise which he had

*New-London,*
*July, 1841.*

Kellogg
*v.*
Denslow.

purchased, he might return them to the vendor. They were disapproved, and for that reason, returned and left on the premises of the vendor, who refuse⬤ ⬤ive them. This action was then brought, by the ven⬤ ⬤ecover back the price which he had paid for them. The court held, that the plaintiff had legally availed himself of the condition to rescind the contract, and might recover back the consideration money which he had paid. See also *Power* v. *Wells, Doug.* 24. n. [8] *Cowp.* 818. *Weston* v. *Downs, Doug.* 23. *Payne* v. *Whale,* 7 *East,* 274. *Lewis* v. *Cosgrave,* 2 *Taun.* 2. *Fortune* v. *Lingham,* 2 *Campb.* 416. *Solomon* v. *Turner,* 1 *Stark. Ca.* 51.

The condition that the vendee may return the property, on a certain event, is *implied* in the case of " executory contracts ; as where an article is ordered from a manufacturer, who contracts that it shall be fit for a certain purpose, and the article sent as such is never completely accepted by the party ordering it." *Street* v. *Blay,* 2 *Barn. & Ald.* 456. ' See also *Okell* v. *Smith* & al. 1 *Stark. Ca.* 107. The latter was an action for the price of 16 copper pans for the manufacture of vitriol. After several trials, the defendants found, that they were not sound, and would not answer the purpose. *Bayley,* J. held, that it was a question for the jury, whether the defendants had used the pans more than was necessary for a fair trial ; and after a fair trial, if they found them insufficient, and gave notice to the plaintiff, he was bound to take them away. If in this case, there was any condition annexed to the sale of the condenser, it was of that character.

Such are the cases cited by the defendant's counsel.

The case of *Hopkins* v. *Appleby,* 1 *Stark. Ca.* 477. was a suit to recover the value of a quantity of barilla ; an article used for the manufacture of soap. The defendant paid into court what he thought it worth, and defended on the ground that it was not of the stipulated quality. Lord *Ellenborough* held, that the defendant should have seasonably notified the plaintiff of its defects; and having omitted to do so, he could not set up those defects as a defence in that action.

*Percival* v. *Blake,* 2 *Car. & Payne,* 514. was *assumpsit* for the price of an iron vat, which had been found defective. *Abbott,* Ch. J. held, that where the defects were not discovered and notice given in a reasonable time, the defendant

could not avail himself of them in answer to an action for the price, unless some deceit had been practiced by the vendor.

*New-London,*
*July,* 1841.

Kellogg
*v.*
Denslow.

In *Milner* v. *Tucker*, 1 *Carr. & Payne*, 15. it was held, by *Burrough*, J., that if goods were supplied not conformable to the order, the buyer must return them in a reasonable time, or he will be bound to pay for them ; and that, if a man take an article, and keep and use it as his own, although it was not according to contract, he is bound to pay for it. The article was a chandelier.

In *Cash* v. *Giles*, 3 *Carr. & Payne*, 408. which was an action to recover the price of a threshing machine, which proved unfit for use, it was held, by *Park*, J., that it was the duty of the defendant either to have immediately returned it, or given immediate notice to the plaintiff to fetch it away, as it was of no use ; but by having kept it several years, he had waived all objections to its goodness, and was bound to pay for it. This, however, refers to objections as then offered, by way of defence against an action for the price, and does not imply that the buyer could not maintain a cross action upon the warranty, if there was any. He had, indeed, foregone his time for *rescinding* the contract, but had not cut himself off from any remedy to which he was entitled on its *affirmance*. And in *Groning* & al. v. *Mendham*, 1 *Stark. Ca.* 257. which was an action for the price of clover seed sold by sample, the defendant contended, that the seed delivered did not accord with the sample ; but it was held, that before he could go into such a defence, he must prove that he had offered to return the seed, upon discovering its inferiority.

Upon these cases the defendant has relied, to shew, no recovery can be had on the warranty, because notice was not seasonably given of the defects in the condenser. If this were a suit against the vendee to recover the price, or against the vendor to recover back the consideration paid, those and other cases might be considered as relevant. They refer to those cases where the vendee either claims, or defends, on the ground, that the contract has been rescinded, and is no longer open. Such proof, in the present suit on the warranty, instead of aiding, would defeat the action ; for the suit is upon the contract, and could not be sustained, if that had been rescinded ; and notice of the defects is never necessary, except for the purpose of nullifying the sale and revesting the vendor

with the title. If the plaintiff has not repudiated this contract in a reasonable time, the only consequence is, that he has ratified it. This the present suit assumes, and is brought in affirmance of the sale.

A sale may also be rescinded, by the vendee, in a reasonable time, if the vendor is guilty of fraud in misrepresenting the article sold. But in all cases of fraud or warranty, where the vendee has the right of disaffirmance, he may keep silence, and bring his action, in affirmance of the sale, either for the fraud or upon the warranty. After a full acceptance by the vendee, with knowledge of the defects in the property, or neglect to obtain that knowledge, his right to annul the sale is extinguished, but his other remedies are unimpaired.

There has been some diversity of opinion among eminent jurists, whether a vendee, to whom an *absolute* sale has been made with warranty, upon discovering defects in the property, could return it to the vendor and rescind the contract, when there was no fraud in the transaction. In *Curtis* v. *Hannay*, 3 *Esp. N. P. Ca.* 83. an affirmative decision on this point was made at *Nisi Prius*, by Lord *Eldon*. Mr. *Starkie* adopts the same opinion, in his treatise on *Evidence, part* 4. *p.* 646. But in 1831, these opinions are considered, by the court of *K. B.*, and expressly disapproved. *Street* v. *Blay*, 2 *Barn. & Adol.* 456. They unanimously held, that if the sale was unconditional and without fraud, the vendee could not rescind the contract and return the property, without the concurring assent of the vendor. Thus the law is settled upon this point, in that country.

In *Fielder* v. *Starkin*, 1 *H. Bla. Rep.* 17. which was an action on the warranty of a mare, the defendant obtained a rule to shew cause why the verdict should not be set aside, on the ground that the plaintiff had not returned the mare, or given seasonable notice of her unsoundness. The court of *Common Pleas* held, unanimously, that no notice or return was necessary to be shewn in an action on the warranty. *Heath,* J. adds, that if the action had been for money had and received, an immediate return must have been shewn.

*Thornton* v. *Wynn*, 12 *Wheat.* 183. was an action against the defendant, who had indorsed a note to the plaintiff in payment for a race horse sold to him with warranty. Evidence was exhibited to shew, that the horse was incurably unsound,

and wholly unfit for the object for which he was purchased;
and that the defendant, as soon as the defects were ascertain-
ed, offered to return him to the plaintiff, who refused to take
him back. The court charged the jury, that if they found
these facts true, they constituted no defence, unless the defects
were known to the plaintiff, at the time of the sale. Upon
a writ of error, the supreme court of the *United States* unani-
mously affirmed this opinion. They held, that nothing but
fraud in the sale, or a conditional contract, would authorize
the vendee to rescind the agreement.

When the sale is conditional or fraudulent, the vendee may
waive his right of rescinding it, by his own choice or neglect.
This action for damages is not impaired, by the loss of that
right. The vendor can never complain, that the vendee has
not rescinded the contract. We are, therefore, of opinion,
that this objection to the plaintiff's right of recovery is
groundless.

Another exception taken at the trial, was the variance be-
tween the contract stated in the declaration and that shewn by
the evidence. The proof consists wholly of a written cor-
respondence between the parties. From this it appears, that
the contract was for all the machinery mentioned in the first
count, and at the price there stated, to wit, a jack, a picker,
a condenser with cards attached to it, and 72 feet of machine
cards, for 445 dollars. That sum is composed of the prices
of the respective articles, and ten dollars for the transporta-
tion of the whole. The price of the condenser with the cards
attached, is set at 75 dollars. This was all one contract. It
was to sell and transport to the plaintiff's mill *all* these arti-
cles, and put them up, for 445 dollars. There was no agree-
ment to sell a condenser alone, and put it up, for 75 dollars,
as is averred in the second and third counts; but the further
sum of ten dollars for transportation, was a compensation ex-
tending to the whole. A contract with all its stipulations
need not be set out in the declaration, but those parts only
which are material to the action. But nothing can be omit-
ted which constitutes any part of the consideration. The
several articles were furnished, in this case, at the stipulated
price, in consideration that the plaintiff took them *all.* He
was bound to take the whole, if any. He could not refuse
part, and recover damages for a refusal to deliver the residue.

*New-London,*
*July, 1841.*
_____
Kellogg
*v.*
Denslow.

The contract, therefore, stated in the second and third counts, that the defendant sold the plaintiff the condenser at 75 dollars, is fatally variant from the contract proved.

The first count avers, that the machinery was agreed to be delivered "*in six weeks*" from the 10th day of *September*, 1838. The evidence is, that it was to be delivered "in about six weeks" from that time. A contract to deliver in *about* six weeks would be fulfilled, by a delivery the *day after* six weeks had elapsed ; but a contract to deliver "in six weeks" from a given time, is broken, by a single day's delay after that period has expired. This cannot be controverted. The contract, therefore, stated in the first count, and that proved, are not identical, but variant. We regret this, but cannot relax the important and unyielding rule, which is applicable to the point.

It has been said, that as there is no complaint in the declaration, that the property was not delivered in time, this part of the contract is immaterial in this case, and within the rule which dispenses with a statement of those parts of the contract which are not material to the action. But here is a *misstatement* of an important stipulation, which always constitutes a variance, although an *omission* might be no ground of exception.

We consider the declaration as unsustained by the evidence, and therefore, grant a new trial.

WILLIAMS, Ch. J., and CHURCH and STORRS, Js., were of the same opinion.

WAITE, J. The plaintiff in this case brought his action upon the warranty of certain articles of machinery sold to him by the defendant. On the trial, the defendant claimed, that no recovery could be had, on the ground of variances between the allegations and proof.

By the law of this state, if the evidence will support either count, the defendant's claim for a new trial cannot prevail. *Wolcott* v. *Coleman*, 2 *Conn. Rep* 324. The principal variance between the allegations in the first count and the evidence, relates to the *time* when the machinery was to be delivered. The averment is, that it was to be delivered in six

weeks from the 10th day of *September*, 1838 : the evidence is, that it was to be delivered in *about* that time.

Is that variance material and fatal ? It might have been, had the plaintiff sued for not delivering the machinery within the stipulated time. But that is not the present case. The plaintiff does not complain of the non-delivery, but of the *quality*, of one of the articles delivered.

It is not denied but that the consideration for the defendant's promise, is truly stated. The variance is only in that promise.

The rule is now perfectly well settled, that in declaring upon a contract, it is not necessary to set out all the promises made by the defendant, but only such as the plaintiff claims to have been broken. If he goes further, and states such as are not material to the questions in issue, he is liable to censure. Indeed, one reason for the decision in *Bristow* v. *Wright* was, in the language of Lord *Mansfield,* to " prevent the stuffing of declarations, with prolix, unnecessary matter." *Doug.* 668.

Thus, in an action on the warranty of a horse, the allegation was, that he was worth 80*l.*, and a young horse ; the proof, that he was worth 80*l.* was sound, young, and had never been in a harness. It was held, that there was no variance ; that the plaintiff was only required to state truly those parts of the defendant's promise of which he complained. *Miles* v. *Sheward*, 8 *East* 7.

So in an action upon a warranty of a quantity of bacon sold, it was simply averred, that the defendant promised that it was prime bacon. The bill of sale produced, shewed the promise to have been, that it was prime singed bacon of *Strangeman's* manufacture. And this was holden to be no variance. The court said, that the plaintiff must state all that relates to the point of which he complains ; and beyond that he need not go. *Cotterill* v. *Cuff*, 4 *Taun.* 285.

This doctrine has not only been repeatedly recognized, by the *English* courts, but has received the sanction of this court. Thus, *Hosmer*, C. J., in giving his opinion in *Curley* v. *Dean,* 4 *Conn. Rep.* 265. says : " The promise sought to be enforced need not be co-extensive with the one actually made ; it being sufficient to state so much of the contract only as evinces

*New-London,*
*July, 1841.*

Kellogg
*v.*
Denslow.

the engagement on which the plaintiff grounds his action." See *Packer* & al. v. *Palmer*, 4 *B.* & *Ald.* 387.

In this case, the plaintiff grounds his action upon a breach of the warranty of one of the articles which he purchased of the defendant. It was only necessary for him to set out so much of the defendant's contract as shewed the warranty. The time and manner of the delivery was not the ground of complaint, and need not have been stated; and all that relates to that subject is surplusage.

But it is said, that although it was not necessary for the plaintiff to have stated that part of the contract, yet having done it, he is bound to prove it as alleged. This probably presents the most serious question in the case.

Had the plaintiff declared upon a *deed*, or *an instrument in writing*, setting it out as such, in the declaration, perhaps according to the authority of *Bristow* v. *Wright*, the variance might be fatal. But I apprehend an examination of the more modern authorities will shew, that the present case does not fall within the rule recognized in that case. *Doug.* 665.

In a note to that case, it is said, that it is now settled, that the strictness of that case holds only in cases of *records* and *written contracts.*

*Buller*, one of the judges by whom that case was decided, afterwards admitted, that the correctness of that decision had been sometimes doubted. *Peppin* v. *Solomons*, 5 *Term Rep.* 496. In another case, he remarked, that the court had repeatedly said, that case was not an authority beyond the cases of contracts, and added, perhaps the rule laid down in that case would be found to extend to all cases of *records* and *written contracts. Gwinnet* v. *Phillips*, 3 *Term Rep.* 646.

And Judge *Gould*, in giving his opinion in *Bulkley* v. *Landon*, 2 *Conn. Rep.* 413. speaking of the case of *Bristow* v. *Wright*, and the cases there cited, said, they had placed the rule beyond debate, that a record or *written instrument*, when alleged in pleading, must be proved precisely as set out, unless the statement of it is so entirely impertinent that the whole of it might be struck out, without injury to the pleadings.

So the supreme court of the *United States*, in speaking of a variance between a contract as alleged and proved, said, it will be recollected, that this does not purport on the face of the declaration to be a description of a *written instrument,*

nor the recital of a deed or record *in haec verba* ; clearly im-
plying a distinction between a written instrument described
in the declaration, and a parol contract. *Ferguson* v. *Har-
wood*, 7 *Cranch* 408.

If, then, the rule laid down in *Bristow* v. *Wright* is limited
in its operation to records, deeds, and *written instruments*, the
present case will not fall within it, although founded upon a
contract. For although the contract is proved, by the cor-
respondence between the parties, yet there was no written
contract within the language used. And there is very good
reason for such limitation, aside from the authorities cited.
For if a party recites a record, deed or written instrument in
his declaration, there may be more propriety in holding him to
greater strictness, than when he declares upon a parol con-
tract, to be proved, often times, by the vague and uncertain
recollection of witnesses at the trial.

The hardship of that rule was felt by Lord *Mansfield* him-
self, in giving his opinion, and has often since been complain-
ed of, not only by suitors, but by judges. *Ferguson* v. *Har-
wood*, 7 *Cranch*, 408. *Gwinnet* v. *Phillips*, 3 *T. R.* 646.
*Peppin* v. *Solomons*, 5 *T. R.* 497. *Sheehy* v. *Mandeville*, 7
*Cranch*, 478.

And in modern times, more liberal and rational rules have
been adopted, and decisions extending the rigour of the law
of variance, have been overruled, and the law placed upon
more just and equitable principles.

Thus, in an action against a sheriff for a false return, the
declaration stated a judgment recovered in *Trinity* term. The
judgment produced was rendered in *Easter* term. And this
was holden not to be a fatal variance. *Abbott*, Ch. J. What-
ever may have been the rule upon this subject in ancient times,
a distinction is now established between allegations of sub-
stance and allegations of matter of description. The former
require to be substantially proved ; the latter must be literal-
ly proved. If, therefore, the allegation that the plaintiff, by
judgment, recovered, &c., be an allegation of substance only,
it was sufficient to prove any judgment to warrant the writ.
And although the plaintiff alleged a judgment *prout patet per
recordam*, it was holden to be an unnecessary averment, and
might be rejected as surplusage ; and that, if it could be
altogether struck out of the declaration, without injuring the

*New-London,*
July, 1841.

Kellogg
*v.*
Denslow.

plaintiff's cause of action, it was quite clear, that the proof necessary to support such an allegation (when material) need not be given.   *Stoddart* v. *Palmer,* 3 *B. & C.* 2.

So in an action against a sheriff for taking insufficient pledges in a replevin bond; the declaration alleged, that the plaintiff distrained the goods of one *Field,* who afterwards, at the next county court, before certain persons, then suitors of said court, appeared and levied his plaint.   The record, when produced, shewed, that the court was holden before persons different from those named in the declaration.   The court held the variance immaterial.   *Bayley,* J. referring to some modern cases, said, in them, " the court had put questions of this nature upon a reasonable and beneficial ground ; and as far as they could, have prevented parties from being turned round in matters of form, which had no connexion with the justice of the case."   *Draper* v. *Garrat* & al. 2 *B. & C.* 2.

Such, at the present time, seems to be the law upon the subject of variance.   Let us apply it to the case under consideration.

The plaintiff sues for a breach of warranty as to the quality of a particular article of machinery purchased of the defendant.   He states truly and correctly the consideration for the defendant's promise, and so much of that promise as he claims to have been broken.   He was bound to do no more. He has, however, gone further, and attempted to state the time within which the articles were to be delivered ; and upon examining the correspondence of the parties, a *single word* is omitted, relating to the time of delivery.   But at the same time, he states, that the articles were delivered by the defendant, and received and paid for by the plaintiff, under, and in pursuance of, the agreement of the parties.   The variance, therefore, is of no sort of importance as regards the merits of the controversy. It affects not, in any manner, the promise for the breach of which the plaintiff sues.   The substance of the averment, (the sale and delivery of the articles,) is admitted in the declaration.

The plaintiff sets out no deed or *instrument in writing ;* and therefore, does not bring his case within the harsh rule of *Bristow* v. *Wright.*   The time of the delivery of the articles, in this case, surely could be no more important than the time of the rendition of the judgment in the case cited.

The remarks of the late Chief Justice *Marshall*, seem to apply to this case with peculiar force: "Courts," said he, "being established for the purpose of administering real justice to individuals, will feel much reluctance at the necessity of deciding a cause on a slip in pleading, or on the inadvertance of counsel. They can permit a cause to go off on such points only, when some rule of law, the observance of which is deemed essential to the general administration of justice, peremptorily requires it." *Sheehy* v. *Mandeville, 7 Cranch,* 208.

*New-London, July, 1841.*

*Kellogg v. Denslow.*

Upon the trial of this cause, I could not but feel that it would be productive of manifest injustice to prevent the plaintiff from proceeding with his cause, in consequence of a variance so unimportant and immaterial. And after a careful and deliberate examination of the authorities upon the subject, I cannot find any conflict between the law and the justice of this case. I can discover nothing, which, in the language of Mr. Justice *Bailey,* will prevent this court from doing what, in modern times, courts have repeatedly done, place the question upon reasonable and beneficial grounds, and not turn a plaintiff round upon a mere matter of form, having no connexion with the justice of the case.

Upon the other points I concur in the opinion expressed by the majority of the court. I would, therefore, not advise a new trial.

New trial to be granted.