ORVIS v. WELLS, FARGO & CO.

(Circuit Court of Appeals, Second Circuit. March 19, 1896.)

1. CONTRACTS—AGENTS—UNDISCLOSED PRINCIPALS.
    An agreement between two brokers, each acting for an undisclosed prin-
    cipal, does not give rise to two distinct contracts, one between the brokers
    and the other between the principals, but to one contract only, and sep-
    arate satisfactions cannot be obtained from both broker and principal for
    a cause of action arising out of such contract.

2. PRINCIPAL AND AGENT—SUBMISSION TO ARBITRATION—RATIFICATION.
    One W., acting for an undisclosed principal, made a contract with one
    B., acting in the same capacity, for the sale to B. of 500 shares of mining
    stock; the contract being expressly declared to be governed by the laws
    of the New York Mining Stock Exchange, of which both W. and B. were
    members. A controversy afterwards arose over an offer of performance
    of the contract made by W., which B. claimed to be insufficient; and this
    controversy was submitted to the officers of the exchange, under its rules,
    and was decided against B., who was directed to accept W.'s offer of per-
    formance and pay the price of the stock. B.'s principal, O., thereupon
    furnished him with the necessary funds. B. paid for and received the
    stock, and delivered it to O., who accepted it. O. subsequently brought
    an action against W.'s principal for damages sustained through the alleged
    failure to perform the contract. Held, that any cause of action for breach
    of the contract was barred by the submission to the arbitration of the
    officers of the exchange, which, if not originally authorized by O., was
    subsequently ratified by him.

3. ARBITRATION AND AWARD—MISCONDUCT OF ARBITRATOR—HOW AVAILED OF.
    Held, further, that O. could not, without rescinding or disaffirming the
    award, and while retaining its fruits, avoid its effect, as a bar to the
    original cause of action, by showing misconduct of one of the arbitrators.

In Error to the Circuit Court of the United States for the South-
ern District of New York.

Frederick S. Parker and Herman Aaron, for plaintiff in error. ·

Allan McCulloh, for defendant in error.

Before PECKHAM, Circuit Justice, and WALLACE and SHIP-
MAN, Circuit Judges.

SHIPMAN, Circuit Judge. On July 22, 1881, William T. Whiting
sold to Duncan F. Blount, by an agreement in writing, 500 shares of
the capital stock of the Cheyenne Consolidated Mining Company, at
one dollar per share, "payable and deliverable, at seller's option,
within thirty days." The contract was expressly declared to be
governed by the laws of the New York Mining Stock Exchange, of
which each party was a member.    In this transaction, Whiting was
the broker of Wells, Fargo & Co., and Blount was the broker of the
plaintiff, Charles E. Orvis.    Wells, Fargo & Co. guarantied the per-
formance of the contract.    Under the rules of the exchange, de-
posits of margin are required to be made in case the market price of
the stock moves from the contract price.    After July 22d the stock
rose in value, and, under repeated calls for margin, Wells, Fargo &
Co. deposited $4,000.    When the stock reached $15 per share, Whit-
ing, the defendant's broker, refused to deposit more margin.    On
July 20, 1891, the stock reached $20 per share, and Blount notified
Whiting that he would buy the stock in under the rule of the ex-

change which provided that in case of default of one party the other party may buy or sell the stock at the business room of the exchange, upon notice to the other party of the intended time of sale or purchase. Whiting still refusing to add to his margin, Blount bought the stock in for $10,000. The defendant had "deposited" in the office of the Cheyenne Consolidated Mining Company, with instructions to transfer to Blount or his assigns, as a fulfillment of the contract, 300 shares of Cheyenne Gold-Mining stock, and a "call" for 200 shares of Cheyenne Consolidated Mining Company stock, due at a later day, and had caused Blount to be notified of such deposit, and refused, through its broker, to pay the sum of about $9,500 which was alleged to be due upon its breach of contract. A rule of the exchange provided that it was the duty of the arbitration committee to take cognizance of, and exercise jurisdiction over, all matters of difference between members of the association, and their decision was binding, subject to an appeal to the governing committee. The dispute between Blount and Whiting, under this contract, was brought before the arbitration committee, which decided against Blount, and directed him to pay the $500 specified in the contract, and to take the "call" for 200 shares, and the 300 shares of stock which had been tendered. This award was sustained by the governing committee. After the final decision, Orvis furnished Blount with $500 to pay for the stock which had been "deposited"; the payment was made; Blount received the stock, and delivered it to Orvis, who accepted it. The margins which had been deposited were repaid to Wells, Fargo & Co. Orvis thereupon brought an action at law against Wells, Fargo & Co. to recover the damages, amounting to $9,497.67, with interest from July 19, 1881, which he alleged he had sustained through the defendant's breach of contract for the sale and delivery of the 500 shares of mining company stock. Upon the trial the circuit judge directed a verdict for the defendant, and to reverse the judgment upon the verdict the present writ of error was brought.

The theory of the plaintiff is that out of the transaction two distinct and different contract obligations arose, viz. the obligation of the brokers, who were ostensible principals, and the contract between the plaintiff and defendant, who were undisclosed principals, and that the extinguishment, by award or otherwise, of the broker's liability, did not affect the contract between the plaintiff and defendant. While it is true that a party to a contract may elect to sue the ostensible principal, or the actual and undisclosed principal, when he is disclosed, yet there are not two different contracts, for a breach of which he can obtain satisfaction from each of the respective parties. In this case, Blount, who was Orvis' agent, submitted the questions in dispute under this contract to arbitration. If, when he first submitted the case, he did not act under Orvis' authority, the submission, the arbitration, and the award were ratified by his principal, who complied with the provisions of the award, paid the amount due, and accepted the stock, which was declared to constitute a good delivery. It is difficult to see how the acts of an agent can be more fully ratified by his principal, and how a valid

award can be a more complete bar to a suit upon the original cause of action, for the award has been performed by the plaintiff, who has received and accepted stock in discharge of the apparent principal's liability under the contract, which stock he apparently has neither returned nor offered to return. The old cause of action for a breach of contract has disappeared, because, by the acceptance of the stock and the payment of the purchase price, he has waived the right to insist that there was a breach.

But it is said that the award was invalid by reason of the misconduct of one of the arbitrators. It is true that a court of equity has the power to set aside an award by reason of the fraud or fraudulent conduct of the arbitrators, and while, at common law, fraud was not a defense to an action at law upon the award, yet, in many of the states, fraud of the arbitrators is a defense to such an action. 2 Greenl. Ev. § 78; Power Co. v. Gray, 6 Metc. (Mass.) 131, 169. In this case, however, the award has been performed, and the plaintiff is suing upon the original cause of action, without attempting to rescind or disaffirm the award, but is retaining its fruits. He retains that which he received in satisfaction of the alleged breach of contract, and seeks a new satisfaction. If a party wishes to disaffirm or rescind a contract because it was vitiated by fraud, he must return, or offer to return, the property which he received under the contract. Kellogg v. Denslow, 14 Conn. 411. The judgment of the circuit court is affirmed, with costs.