### DEAN *against* MASON.

When an agreement is reduced to writing, all previous negotiations, resting in parol, are resolved into, and extinguished by, the writing.

The sale of a chattel for the price of a sound article of that description, does not amount to a warranty that the article sold is sound and merchantable.

To entitle a purchaser to maintain an action against the seller for unsoundness in the article sold, there must be either fraud, or an express warranty.

Where the declaration in an action of *assumpsit* on a warranty in the sale of a chattel, assigned as a breach, that the defendant, contriving to injure the plaintiff, did not perform his undertaking, but craftily and subtilly deceived the plaintiff in this, &c., but contained no substantive allegation of fraud ; it was held, that proof of fraud was inadmissible to support such declaration.

To sustain an action for money had and received, on the ground of a failure of consideration, the failure must be total ; it is not sufficient that the plaintiff gave a note for such consideration, which he never paid.

The plaintiff, in the first count, declared as follows : " That on the 18th of *August*, 1818, in consideration that the plaintiff would buy of him, the defendant, and at his special request, two certain bales of deer-skins, of the weight of 1503 pounds, at a large price, *viz.* at the rate of 30 cents *per* pound, amounting to the sum of 450 dollars, 90 cents, the de-

fendant then and there undertook and faithfully promised the plaintiff, that said skins were in good and merchantable order; that the plaintiff giving faith and credit to the promise aforesaid of the defendant, and at his special request, afterwards, *viz.* on the same day, bought of the defendant said two bales of skins, at the price aforesaid, *viz.* at the price of 30 cents *per* pound, amounting to the sum of 450 dollars, 90 cents, and then and there paid him the same sum therefor, in his the plaintiff's promissory note, dated the same day, then being the full value of good and merchantable deer-skins, and in good and merchantable order; yet that the defendant, not minding his promise and undertaking aforesaid, but contriving to injure the plaintiff in that behalf, did not keep and perform his promise and undertaking aforesaid, but craftily and subtilly deceived the plaintiff in this, that said skins were not in good and merchantable order, at the time of making the promise and undertaking aforesaid, but, on the contrary thereof, were damaged bales of skins, and were worm-eaten, and mildewed, and rotten, and of no value whatever; whereby the plaintiff hath wholly lost the same, to his damage," &c.

The second count was *indebitatus assumpsit* for money had and received to the plaintiff's use.

The cause was tried, on the plea of *non-assumpsit*, at *Brooklyn, September* term, 1821, before *Peters*, **J.**

To prove the undertaking stated in the first count, the plaintiff offered in evidence the following writing, executed by himself and *James B. Mason*, the defendant : "Whereas *John Mason* of *Killingly*, is now owing and indebted to *Philip Dean* of said *Killingly* [the plaintiff] to the amount of about 300 dollars; *James B. Mason*, out of regard to his brother *John Mason*, and from his free will, agrees to deliver to *Philip Dean* at *Providence*, two bales of deer-skins, which said bales are a part of a few bales of deer-skins, which *James B. Mason* bought of *John Mason* of said *Killingly*, and for which two bales of deer-skins *James B. Mason* agrees to receive of *Philip Dean* his demand of about 300 dollars, which said *Dean* has against *John Mason* on book account, and the balance on said *Dean's* note. The said two bales of deer-skins are those, or two of the three, which were sent by *James B. Mason* to *Boston*, to the order of *Snelling & Mason*. The said deer-skins are to be at 30 cents the pound; and I, the said *James B. Mason*, and I, *Philip Dean*, do agree and bind ourselves to abide by, and be governed by, what is writ-

HARVARD LAW LIBRARY

Windham,
July,
1822.

Dean
*v.*
Mason.

ten above. *August,* 12th, 1818. [Signed.] *James B. Mason.*
                                                        *Philip Dean."*

For the same purpose, the plaintiff also offered in evidence the following writings :

"*Providence, August* 18, 1818.

" Mr. *Philip Dean* bought of *James B. Mason*

Two bales of deer-skins        705
                               798
                               ———
                               1503 *lb.* at 30 cents  $450 90

Received payment, by his note at six months, on interest.
                                              *James B. Mason."*

"*Memorandum.* It is understood and agreed, that 300 dollars of the note received for the above-mentioned deer-skins shall be paid in a demand, which said *Dean* has on book account against *John Mason* of *Killingly ;* and whenever he makes a settlement with the said *John Mason,* and ascertains the balance due from him to the said *Dean,* and the said *Dean* brings an order from the said *John Mason* for 300 dollars for the balance of accounts between them, the same shall be endorsed on said *Dean's* note received for the above-mentioned skins.                                    *James B. Mason."*

The plaintiff also offered evidence to shew, that the book account of *John Mason,* so to be conveyed, was good and collectible.

The plaintiff further offered evidence to prove, that on the 12th of *August,* 1818, the time of the execution and delivery of the writing first recited, the defendant, to induce the plaintiff to enter into such contract, represented and affirmed to the plaintiff, that three of the five bales of deer-skins were good, and two of them were not so; that the three bales sent to the order of *Snelling* & *Mason,* were the three good bales; and that the two bales which were not good, were marked with the letter B, by a licensed packer of skins in *New-York ;* that at the time of making said representation, the defendant had sold the three bales of good skins, as he well knew, and the two remaining bales, as he also well knew, were good for nothing ; that at the time the plaintiff received said two bales, and at the time of executing the second writing above recited, *viz.* on the 15th of *August,* 1818, the defendant offered and tendered to the plaintiff two bales, artfully packed and bound, with the appearance of bales of deer-skins, without the B, or any mark of damage thereon ; and that the plaintiff, believing them to be good, and the same

skins contracted for, received them as and for good skins, on such contract ; but that at the time of receiving them, and on opening them for use, at the plaintiff's tannery, they were found to be deceitfully packed, and were of no use or value. This evidence the plaintiff, claimed he had a right to introduce, to prove, first, such a fraudulent suppression and misrepresentation of facts as amounted to a warranty in law ; secondly, that the thing received was not, from its total defect of the qualities and value of the deer-skins, the thing contracted for ; and thirdly, that the bales, from their quality and value, were not the bales sent to the order of *Snelling & Mason* ; and, of course, the promise and undertaking stated in the plaintiff's declaration, had not been fulfilled.

*Windham,*
*July,*
*1822.*

Dean
*v.*
Mason.

The defendant objected to the admission of all the evidence above stated, as neither proving, nor tending to prove, the issue on the first count ; and the judge rejected such evidence, and every part thereof.

The plaintiff then offered all and each part of such evidence on the second count ; and claimed, that by the total fraud and failure of consideration so proved, the defendant received the money demanded in that count, to the plaintiff's use. To this the defendant objected ; and the judge rejected the evidence, and instructed the jury, that there was no evidence whatever before the court, and directed them to find a verdict for the defendant ; which they accordingly did. The plaintiff moved for a new trial, on the ground that the judge in these decisions had mistaken the law.

*E. Young*, in support of the motion.

*Goddard* and *Cleaveland*, contra.

HOSMER, Ch. J.   The plaintiff has insisted, that his action is sustainable on the ground, first, of express warranty ; secondly, of implied warranty ; and thirdly, of fraud.

1.   As to the claim on the ground of express warranty.

The written contract exhibited in evidence, contains no clause, warranting the soundness or goodness of the articles sold.   The vendor agreed to deliver two bales of deer-skins, at the price of 30 cents *per* pound ; and this, so far as relates to the point under consideration, was the whole engagement.   The plaintiff offered in evidence certain affirmations, made to induce the purchase of the skins afterwards

*Windham,*
*July,*
*1822.*

Dean
*v.*
Mason.

sold, as proof of the express warranty alleged in his declaration ; but this the court rejected, and most correctly. The contract between the parties was entirely in writing ; and all the previous representations made by the defendant, were merged in the written instrument. Every thing before resting in parol, became thereby extinguished, upon this reasonable rule, that when an agreement is reduced to writing, all previous negotiations are resolved into the writing, as being the best evidence of the certainty of the agreement. 5 *Vin. Abr.* 515. 517. *Vandervoort* v. *Smith,* 2 *Caines* 161. *Mumford* & al. v. *M'Pherson & al.* 1 *Johns. Rep.* 413. *Packhurst* v. *Van Cortlandt,* 1 *Johns. Ch. Rep.* 282. *Stevens* v. *Cooper,* 1 *Johns. Ch. Rep.* 429.

2. The implied warranty contended for, is founded on the presumed fact, that an adequate price was given for the skins, admitting them to be good ; and on the inference, that this amounts to a warranty of the articles sold, as being sound and merchantable.

Whether the price paid, was equivalent to the value of merchantable skins, no where appears ; and the supposed foundation of argument never existed. But, if the fact were apparent, the inference would not be sustainable. The notion, that a high or sound price is tantamount to warranty, has been long exploded. 2 *Phil. Evid.* 79. In *Parkinson* v. *Lee,* 2 *East* 314. it was adjudged, that no warranty was implied from the fulness of the consideration ; and that, if the seller sells the thing as he believes it to be, without fraud, the law will not imply, that he sold it on any other terms than those expressed. And it is an established rule, that, in order to entitle a vendee, to maintain an action against the vendor, there must either be fraud, or an express warranty. *Holden* v. *Dakin,* 4 *Johns. Rep.* 421. *Sands & al.* v. *Taylor & al.* 5 *Johns. Rep.* 395. *Thompson* v. *Ashton,* 14 *Johns. Rep.* 316. *Chapman* v. *Murch,* 19 *Johns. Rep.* 290. *Swett* v. *Colgate,* 20 *Johns. Rep.* 196. The vexatious and expensive litigations, which might often arise, on the doctrine of a warranty implied from the soundness of the price, are prevented, by the adoption of a certain rule, which can never operate unjustly, as by the buyer an express warranty may always be demanded. The case of *Gardener* v. *Gray,* 4 *Campb.* 144. may be supposed to clash with the principles I have assumed ; but in reality, it has no bearing on the matter in controversy. A sample of certain waste silk was shown

to the plaintiff, which silk he purchased, *not having seen it;* and afterwards, on being sent to him, it was found to be much inferior to the sample exhibited. The sample was produced, not as a warranty, but to enable the purchaser to form a reasonable judgment of the commodity; and he had a right to expect a saleable article, answering the description of the contract. He had no opportunity to inspect the silk; and the maxim of *caveat emptor,* for this reason, did not apply. He might say, with perfect truth, *non haec in foedera veni;* this was not the article described and sold. But, if it had been shown to the purchaser, and he had then bought it, the case would essentially differ from the former; and had the quality been misconceived, the loss must have fallen on the purchaser, unless there was an express warranty.

3. Testimony in proof of fraud, was offered by the plaintiff, and rejected; and the propriety of this, constitutes the only remaining question.

Undoubtedly, there are actions of *assumpsit,* founded on a breach of duty, partaking of the nature of a *tort;* but the plaintiff's suit is not of that description. *Powell* v. *Layton,* 2 *New Rep.* 365. *Hallock* v. *Powell,* 2 *Caines* 216. According to the most approved precedents, it is an action on the contract of warranty, and nothing more. In the part of the declaration, wherein the original foundation of the action is set forth, the defendant's undertaking and promise is specified; but no where is there to be found any allusion to fraud, except in the specification of the *breach.* There it is said, that the defendant, " contriving to injure the plaintiff in that behalf, did not regard, keep, and perform his promise, and undertaking aforesaid, but craftily and subtilly deceived the plaintiff in this," &c. This is the common form of alleging a breach in *assumpsit,* as will be demonstrated, by reference to the books of entries. This mode of alleging breaches in mere *assumpsit,* will be found in declarations on promissory notes, (*Pleader's Assistant,* 38, 9.) on awards, (2 *Chitt. Plead.* 80.) on promises, (2 *Chitt. Plead.* 85. 87. 88. 89. 90. 97.) and on warranty. (2 *Chitt. Plead.* 100.) When the gist of the action is placed on a *false* warranty, the plaintiff avers, in setting forth the nature of his claim, that the defendant *falsely* and *fraudulently* affirmed. 2 *Chitt. Plead,* 276. In *Evertson* v. *Miles,* 6 *Johns. Rep.* 138. which was an action very analogous to the one before the court, it was said, by *Van Ness,* J.: " When the plaintiff does not go

*Windham,*
*July,*
*1822.*

*Dean*
*v.*
*Mason.*

for a breach of contract, but grounds his action on deceit and fraud in the sale, the fraud must be averred and charged as a substantive allegation. To admit the proof of it, without such averment, would be going wide of the issue, and taking the party by surprise. To justify the proof offered, it ought to have been charged, that " the defendant falsely and fraudulently represented." The court, in this case, rejected the testimony to show fraud, precisely for the want of those allegations, which the judge in the case before us, considered as indispensible.

On the count for money had and received, little reliance *seems to have* been placed ; and certainly, it merits no consideration. The defendant never received any money from the plaintiff; the note given in consideration of the skins, never having been paid.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

CHAPMAN, J. The only question, which I think of much importance, in this case, is, whether in the sale of articles of the kind in controversy, there is an *implied* warranty ; and this, I think, is a question of the first importance.

For a long course of years, in this state, there was an implied warranty as to quality supposed to be attached to every sale, where the vendor received a *sound* price ; and also, that where the vendor was guilty of any fraud in such sale, he would be liable to the vendee, as on an *express* warranty.

It is admitted, that the principles involved in the cases alluded to, are not supported, in their *extent,* either by the authorities in *England,* or in the neighbouring states ; nor do I think them consistent with sound reason. But in overruling these cases, I would have preserved those principles, which are known to the common law, and which are essential to the preservation of justice, in the intercourse of men with each other. The decision in question, I fear, does not. I admit, that in the sale of articles, which have no *marketable* value, there is no implied warranty, except as to the vendor's having a right to sell ; as for instance, in the sale of a horse, pictures, &c. No two of these are supposed to have the same value ; and no man would think of enquiring the price of horses, &c. in market, except whether they were high or low. In a contract for an article of this sort, the *fancy* of

*Windham,*
July,
1822.

Dean
*v.*
Mason.

the parties has more to do with settling the price of the article, than the *intrinsic* value of it. In such cases, the vendee has no right to demand of the vendor any thing beyond *good faith*. There is no standard to determine whether the vendee has paid a *sound* price.

But in the sale of articles, which have a marketable value, the case is entirely different. In the nature of the sale, there is involved a contract, that the article sold is what it purports to be. A man, wishing to purchase articles of this sort, enquires in market for their price :—what is superfine flour, wheat, rye, pork, beef, &c. bringing ? Or he learns from the price-current. He purchases ; and, on examination, he finds his flour superfine indeed, but so sour as to be worth nothing. His wheat and rye have no other defect, than that they are grown, and of course of little worth. His pork and beef are mess, but wholly spoiled. He has paid the vendor the full value of sound articles of the kind ; and he must now be told, that if there is no fraud, he has no remedy, but must stand to the loss. I need not insist on the impropriety of adopting this doctrine, from the wide door it will open for the practice of fraud. Seldom is it, that the vendee can prove a knowledge of the defect in the vendor. The ground I proceed upon, is, that it is as much understood, by the parties to the sale, that the articles sold should be merchantable, as if there had been an express contract to that effect. The answer to this, is, that the vendee may always secure himself, by taking an express warranty. This is true ; and so he may, in most cases, by using extraordinary diligence against fraud. The truth is, that in the ordinary intercourse of mankind, in buying and selling such articles, the vendee never thinks of taking an express warranty, that the article is what it is sold for, when he pays the full value. Indeed, he would think, to require it, would be to call in question the integrity of the vendor.

Why is it, that the vendor is liable on an *implied* warranty, when he sells without *title ?* Or why is he liable, when he sells for *superfine* flour, that which is of a different quality ? Why, when he sells *prime* pork for *mess ?* The answer is easy : in the first case, the buyer receives no value ; and in the other cases, he receives less in value than he, by his contract, had a right to receive ; and yet, if the articles are of the same denomination he contracted for, however worthless, he is without remedy.

*Windham,*
*July,*
*1822.*

*Dean*
*v.*
*Mason.*

The principles adopted by the court, in deciding that *fraud* in a sale, will not support a count on an express warranty, (I mean where there is no one implied,) I fully concur in.

The form of action should be adapted to the nature of the injury. The defendant, in an action founded on the warranty, is not informed of the nature of the plaintiff's claim ; and, of course, can not be prepared to make his defence. Yet where there has been a total failure of consideration, an action for money had and received, has often been supported. But it must be remembered, that the defendant, in such a case, has a right to demand a bill, stating the plaintiff's precise claim.

It remains, now, to be seen, whether the case under consideration can be brought within the principles, I am attempting to maintain. This was an action founded on a sale, with warranty, of two bales or packs of deer-skins. That they were not merchantable, is admitted ; and that there was no special warranty, is admitted. The question, then, is, has this article a marketable value ? There can be no doubt of this, any more than with respect to flour, pork, beef, &c. These are articles found in our prices-current, and in our market. The ground taken by the court, is not that this is not an article, which has a marketable value, but that there is no *implied* warranty attached to the sale of any article whatever, as to its quality ; and that there is no difference between articles, which have a *marketable* value, and those which are mere articles of fancy.

The evidence, in relation to the second count, was properly rejected ; for though the deer-skins were of little value, they were of some ; and to support that count, they must have been of none. There must have been a total failure of consideration.

New trial not to be granted.