SAMUEL T. HEAL

*vs.*

THE INTERNATIONAL AGRICULTURAL CORPORATION
BUFFALO FERTILIZER WORKS.

Penobscot.    Opinion November 26, 1924.

*The admission of a hypothetical question is not exceptional error where any assumed embraced facts are not supported by evidence unless such specific ground of objection has been called to the attention of the trial Judge; nor where the evidence introduced in the case before the question is propounded fairly tends to prove the assumed facts embraced in the hypothetical question. Under a declaration in assumpsit fraud and deceit are not in issue and if alleged cannot be proved. Scienter is immaterial in an action of assumpsit for breach of warranty.*

In the instant case evidence had been introduced before the hypothetical question was asked fairly tending to prove the facts assumed.

The identification of a sample having been fairly established by the evidence, the submission of an analysis of it to the jury was warranted, and if the residue from which the sample was taken be small, this fact goes only to the weight of the evidence, not to its admissibility.

There was no error in the refusal of the trial Judge to instruct that the defendant would not be liable in the absence of fraud or deceit. In the first count of his declaration the plaintiff declared in assumpsit, the gravamen of his cause of action being the breach of the defendant's contract or warranty, and the count is not changed into an action of deceit by allegations of fraud and deceit, which are matters of aggravation only; nor by the defendant's plea of not guilty which was cured by verdict.

The defendant's requested instruction "that if the jury find from the evidence that the defendant had no reason to apprehend that the presence of borax

might be injurious, that it would not be liable in this action" was properly refused, for the scienter is immaterial where there is a warranty.

On motion and exceptions by defendant. An action on the case to recover damages for an alleged breach of implied warranty in the sale by defendant to plaintiff of commercial fertilizer alleged to have contained borax to such a percentage as to be deleterious to the growth of potato plants. The defendant pleaded the general issue of not guilty. The jury returned a verdict for plaintiff in the sum of seven hundred and fifty-nine dollars. The defendant excepted to the admission of a hypothetical question, and excepted to the admission of an analysis of a sample of fertilizer purchased from the defendant by a neighbor on the ground that the identity of the sample had not been established, and that the residue from which it was taken was not sufficient to accurately represent the entire lot, and also excepted to a denial of a motion by defendant for requested instructions. Defendant also filed a general motion for a new trial. Motion overruled. Exceptions overruled.

The case is fully stated in the opinion.

*Leon G. C. Brown and John S. Williams*, for plaintiff.

*Cook, Hutchinson & Pierce, Powers & Mathews, and McLean, Fogg & Southard*, for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, SPEAR, STURGIS, BARNES, JJ.

STURGIS, J. This is an action to recover damages for breach of warranty in the sale of commercial fertilizer, and comes up on motion and exceptions.

Sometime in the Spring of 1917 the plaintiff purchased from the International Agricultural Corporation, through its subsidiary, the Buffalo Fertilizer Works of Houlton, Maine, six (6) tons of commercial fertilizer, and used it in planting six acres of potatoes on his farm in Lagrange. The fertilizer was forwarded by the defendant in a two-car-load shipment to the Lagrange Farmers' Union, which distributed it to the plaintiff and other customers from the cars at the Lagrange Depot. The fertilizer was shipped in barrel containers, each bearing on the outside a guarantee of contents as being four per cent. available ammonia, eight per cent. available

phosphate and four per cent. soluble potash; this formula being commonly referred to in the parlance of the trade as 4-8-4. The gist of the cause of action stated in the declaration is that the defendant promised to furnish fertilizer which should be suitable and fit for the purpose of planting potatoes and free from poisonous or injurious ingredients, but sold the plaintiff fertilizer containing borax which, by reason of its poisonous character and the quantity present, killed the plaintiff's young potato plants and sprouts and substantially reduced his potato crop for that year.

The plaintiff testified that he planted and cultivated his potatoes according to approved and customary methods but when the plants came through the ground they "was kind of goldish yellow right around the edge of the leaf" and "all kind of turned brown and died down." He said the growth was very "pindling" and upon pulling up the plants the seed piece was in "good sound condition," but there were "no fibre roots at all" and the main roots were "kind of yellowish and just stubs." Substantially the same description of the plaintiff's potatoes was given by three neighbors,—one adding that the leaves when the plants were small were yellow around the edge and as they grew the yellow color extended over the leaf, and the last of July or first of August the plants were about all yellow and dead. This last witness also stated that the seed piece looked all right; he did not see any rotten seed, but did notice that the roots of the seed piece were short.

Alfred M. G. Soule, Chief Deputy of the State Department of Agriculture, called as an expert by the plaintiff, qualified by stating that since 1919 he had been making a special study of the effect of borax on potato growth and, for that purpose, had consulted all available literature on the subject, and in company with plant pathologists and soil chemists had examined and observed more than one hundred fields of potatoes and the varying effects of borax upon potato growth. He stated that the characteristic symptoms of borax poisoning of potatoes are: "The general appearance of the leaves shows a pronounced yellow effect, especially at the margin, a dwarfed appearance of the plant; a spindling appearance of the stalks, and the appearance below the ground shows a stunted appearance of the rootlets, and a burned appearance of the small roots— fibrous roots; and a preserved effect, generally, of the seed piece—a dried, particularly dried, appearance of the seed piece."

The plaintiff introduced an analysis of a sample of 4-8-4 fertilizer from the two-car-load shipment sent by the defendant to the Lagrange Farmers' Union, from which the plaintiff obtained his six tons, showing 21.4 pounds of anhydrous borax to the ton. This sample was sufficiently identified with the plaintiff's fertilizer to justify the inference that the fertilizer which the plaintiff used contained borax in the same proportion. Mr. Soule was asked: "What would be the effect of using fertilizer containing twenty-one pounds of borax per ton?" And he replied: "It would be very disastrous in my opinion." It appears that the potash in the fertilizer sold the plaintiff was known as Searles Lake Potash, and the borax present was in combination with this potash. Mr. Soule was cross-examined as to experiments conducted by the Maine Experiment Station in the Presque Isle potato fields and his opinion that 21.4 pounds of borax to the ton was disastrous to potato growth found some confirmation in these experiments. "Q. On the third line of figures the amount of potash in each instance present being 108 pounds per acre; under the sulphate of potash you get 307 bushels per acre, is that correct? A. That is true. Q. Under the Nebraska potash, with no borax present, you get 313 bushels per acre? A. That is true. Q. With the Searles Lake potash, *there being present 17.7 of borax per acre,* you get a yield of 285 bushels? A. Yes, a diminishing of—. Q. On the last line, there being present in each instance 144 pounds of potash; under the sulphate of potash with no borax present, you get 290 bushels? A. That is correct. Q. Per acre. And on the Nebraska potash with no borax present, you get 309 bushels per acre? A. That is true. Q. On the Searles Lake potash *with 23.6 pounds borax present per acre,* you get 281 bushels? A. That is true."

The defendant called to the stand, Edwin A. Rogers of Brunswick, a potato raiser of twenty-five to thirty years' experience, and a writer upon the subject of potato culture, who stated that the yellowing of the leaves of potato plants is a common occurrence, and may be attributable to a too heavy or misapplied use of fertilizer. In support of this statement, he related his experience during the current year wherein an excessive amount of fertilizer was planted by error with the result that when the plants first came up there was a very marked yellowing of the margin of the leaves. He, however, states: "This condition did not last but a week or ten days, or we got a rain within

a short time and they came out of it and grew very nicely." The plaintiff's potato plants, it seems, did not *come out of it and grow very nicely*, but the yellowing spread all over the leaves and they finally withered and died in spite of the fact that there was more than an average rainfall during the early months of their growth. Mr. Rogers was further examined by the defendant's counsel as follows: "Q. And did you examine the fields where there was reported borax injury the preceding year and where grain had been planted in 1920 to find out what the result was? A. I did, several. Q. And what was the result of your investigation? A. As near as I could determine the crop of grain increased practically in the same ratio *that the potato crop was a failure the year before.*" Mr. Rogers also described various plant diseases to which potatoes are subject, but the evidence fails to disclose that the condition of the plaintiff's potato plants was symptomatic of any such diseases.

Other facts and circumstances were shown on the one side and the other which the parties claimed tended to support their respective contentions, but it is impracticable to extend our analysis of the evidence further. The issue was one of fact. If the defendant sold the plaintiff fertilizer of its own manufacture so debased with borax as to render it poisonous and harmful to growing potato plants, it sold an adulterated fertilizer within the provisions of R. S., Chap. 38, Sec. 12, and the plaintiff is entitled to recover in this action the money value of his loss resulting from its use. This issue, together with the correct rule of damages, was clearly presented to the jury by the presiding Judge, and the jury found for the plaintiff. A careful study and consideration of all the evidence does not convince us that their findings ought to be set aside as manifestly wrong..

We are not unmindful of the recent decision of this court in *Rogers* v. *Kendall*, 122 Maine, 248. However, we think that case is to be clearly distinguished from the case at bar. In *Rogers* v. *Kendall*, the amount of borax present was 6.6 pounds. The sole affirmative evidence in support of the plaintiff's contentions was found in the opinion of an expert who stated that 6.6 pounds of borax per acre was deleterious to growing plants. This opinion was not only unsupported by experiment, test, or authority, but the expert's own prior experiment had demonstrated that the application of 6.6 pounds of borax per acre to potatoes was beneficial rather than harmful. This opinion of the expert was properly characterized as

ipse dixit only, and the verdict based on it was set aside. The case at bar presents a very different state of facts. In this case 21.4 pounds of borax were applied to the acre, and the opinion of the expert, Chief Deputy Soule, that the use of this amount of borax is harmful to potato growth is based on years of personal study and observation of effects of borax in the potato fields of Maine, and is supported and confirmed by the tests and experiments of others. It is consistent with established facts and with probability and reason. The opinion of the court in *Rogers* v. *Kendall* upon the motion cannot be extended to a state of facts so materially different as those established by the evidence in this case.

## THE EXCEPTIONS.

An exception was taken by the defendant to the admission of a hypothetical question propounded by counsel for the plaintiff. The objection when made at the trial was general and not specific, and while counsel now urge in argument that the hypothetical question embraced facts not in evidence, neither the bill of exceptions nor the evidence reported show that the objection was for that cause. To lay the foundation for an exception on that ground, the attention of the Judge should have been called to the specific ground of objection, so that he could determine whether there was sufficient evidence tending to prove the facts assumed. *Powers* v. *Mitchell*, 77 Maine, 369; *Knight* v. *Overman Wheel Co.*, 174 Mass., 455. The exception, however, had it been properly taken, has no merit. An examination of the record disclosed that while counsel in forming the hypothetical question adopted language varying in slight degree from the exact form of expression used by the witnesses, the evidence introduced in the case before the hypothetical question was asked fairly tended to prove the facts assumed.

The defendant objected to the admission of an analysis of a sample of fertilizer purchased from the defendant by a neighbor on the grounds that the identity of the sample had not been established, and that the residue from which it was taken was insufficient to accurately represent the entire lot. The evidence discloses that the sample analyzed and the plaintiff's fertilizer were both Buffalo 4-8-4 fertilizer, manufactured by the defendant and forwarded from its factory at Houlton in the same shipment. Both lots came out of

the same car on the same day, and the barrel containers bore the same brand and guarantee.    These facts were sufficient to fairly establish the identity of the sample and warranted the submission of the analysis to the jury.    *Commonwealth* v. *Goodman*, 97 Mass., 117; *Commonwealth* v. *Kendrick*, 147 Mass., 444.    This conclusion cannot yield to the defendant's second ground of objection.    The fact that the sample was taken from a fifty-pound residue rather than from a larger quantity goes only to the weight of the evidence, not to its admissibility.    The defendant's exception to the admission of the analysis must be overruled.

The defendant requested an instruction that it would not be liable in the absence of fraud or deceit, which was refused and an exception reserved.    The first count of the plaintiff's declaration is not free from objection, but in substance it follows the approved precedents as laid down in *Oliver's Precedents*, 188 et seq.    The gravamen of the cause of action in this count is the breach of the defendant's contract of warranty, and the allegations of fraud and deceit are matters of aggravation only and do not change the count into an action for deceit.    Having declared in assumpsit, fraud and deceit are not in issue, and even if alleged could not be proved under this count. 1 *Chitty on Pleading*, 137;    *Mahourin* v. *Harding*, 28 N. H., 131; *Dean* v. *Mason*, 4 Conn., 428; *Bartholomew* v. *Bushnell*, 20 Conn., 278; *House* v. *Fort*, 4 Blackf., (Ind.), 295; *Bosworth* v. *Higgins*, 7 N. Y. Sup., 210.    Issue was joined on a plea of not guilty, but the character of the action is determined by the declaration and not by the plea, and the mispleading was cured by verdict.    *Winslow* v. *Bank of Cumberland*, 26 Maine, 9; *Cavene* v. *McMichael*, 8 Serg. & Rawle (Pa.), 441; *Garland* v. *Davis*, 4 How., (U. S.), 146.    There was no error in the refusal of the trial Judge to instruct that the defendant would not be liable in the absence of fraud or deceit.

The defendant's fourth and final exception is based upon the refusal to give the following instruction:    "We also request you to instruct that if the jury find from the evidence that the defendant had no reason to apprehend that the presence of borax might be injurious, that it would not be liable in this action."    This was an action for breach of warranty, the declaration in the first count being laid in assumpsit.    Whether or not the defendant had reason to apprehend that the presence of borax in the fertilizer might be injurious is immaterial.    "When there is a warranty, the scienter is immaterial."

*Hillman* v. *Wilcox*, 30 Maine, 170; *Rogers* v. *Kendall*, 122 Maine, 248; *Shippen* v. *Bowman*, 122 U. S., 575; *Wallace* v. *Tanner*, 118 Ill., Ap., 639; *Wilson* v. *Fuller*, 58 Minn., 149; *Place* v. *Merrill*, 14 R. I., 578.

The entry must be,

*Motion overruled.*
*Exceptions overruled.*