FLOYD D. LIBBY *vs.* WOODMAN POTATO COMPANY.

Aroostook.     Opinion, December 21, 1937.

*Doherty & Brown,* for plaintiff.
*Philip D. Phair,*
*Bernard Archibald,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-
SER, JJ.

STURGIS, J.   This action is brought to recover damages for a
breach of contract in the sale of commercial fertilizer. The case
comes up on motion and exceptions.

*MOTION:*

Late in the spring of 1936, the plaintiff purchased fifteen tons of
commercial fertilizer from the Woodman Potato Company, a dealer
in potatoes and fertilizer in Presque Isle. It was put up in 125
pound bags and delivered in two lots, one of five tons to be paid for

in potatoes and secured by a crop mortgage, and the other of ten tons to be paid for on delivery. The seller described the fertilizer, in accordance with the analysis stamped on each of the bags, as 8-16-17 Albatros brand, the formula indicating a chemical content of eight per cent nitrogen, sixteen per cent available phosphoric acid, and seventeen per cent soluble potash.

When the plaintiff, after planting the ten-ton lot, opened up the five tons, which, although delivered first, was lumpy and had to be screened, he discovered a marked lack of uniformity in the color and texture of the fertilizer indicating that the bags varied in their chemical contents and did not conform either to their brands or the seller's warranty at the time of the sale. Four bags were picked at random from the five-ton lot, poured on the floor in piles and samples taken of each in pint sealers which were filled by running the jar up the side of the pile from the bottom to the top. The sealers were then sent to the Maine Agricultural Experimental Station for analysis, their original contents being intact except as to a small quantity which, without the consent of the plaintiff, was removed in transit by a representative of the manufacturer.

The report of the chemist was as follows:

| Sample | Nitrogen | Phosphoric Acid | Potash |
|--------|----------|-----------------|--------|
| 1 | 6.76 | 20.23 | 20.42 |
| 2 | 6.80 | 20.87 | 19.36 |
| 3 | 6.62 | 18.52 | 21.48 |
| 4 | 9.54 | 12.10 | 12.57 |

The samples as taken were fairly representative, we think, of all the bags in the two lots of fertilizer sold by the defendant. *Heal* v. *Fertilizer Works*, 124 Me., 138, 143, 126 A., 644. Their analysis confirmed the lack of uniformity which had appeared when the color and texture of the bags opened and screened were first examined.

After the samples were taken and sent away for analysis, the plaintiff mixed and screened all of the five-ton lot of fertilizer and used it to put in the rest of his potato crop. He planted this fertilizer just as he had the ten-ton lot, spreading eleven hundred pounds to the acre and using the same planters. His cultivation and spraying of his crop were uniform throughout his entire acreage, and, of

course, weather conditions were the same. The plaintiff's potato crop planted with the ten-ton lot of fertilizer was a partial failure. Evidence was introduced without objection that, where the unmixed fertilizer was used, the rows of potato plants were "streaky," being dark green, healthy and well filled out for a distance, then light-colored, sickly and thin, and so on throughout each row. On the other hand, the potatoes planted with the remixed five-ton lot were healthy, of good color and comparatively free from streaks. There was a like variation in the potatoes dug from the two plantings, the yield where the unmixed fertilizer was used varying from forty to eighty barrels to the acre with an excess of undersized potatoes, while the crop planted with the mixed fertilizer was estimated at one hundred and fifteen barrels per acre and the potatoes were of large size and more marketable. This contrast between the potato plants and their yield was particularly apparent in a six-acre field where both lots of fertilizer were used side by side.

And finally, an agronomist from the College of Agriculture, long engaged in experiments in potato fertilization and apparently an expert on that subject, advanced the opinion that the streaked condition of the plaintiff's potato plants could be caused only by the composition of the fertilizer or the amount applied, the latter cause disappearing when, as here, the planting was uniform. He also said that fertilizers of the analyses found in the samples taken by the plaintiff could not be expected to produce as good plants or yield as a brand having an actual 8-16-17 ratio.

The defendant called a potato expert to the stand who was of the opinion that fertilizer of the ratio found in the samples would produce practically as good potato plants and yield as the 8-16-17 brand called for by the plaintiff's contract, and suggested that the streaky conditions of the plaintiff's potatoes and the failure of his crop might be due to soil conditions or mechanical defects in the planters. An inspector from the Department of Agriculture testified that he examined the plaintiff's fields and potato crop for certification but did not notice a streaky condition and reported the appearance of the fields to be in part good and the rest fair. And employees of the seller denied that the plaintiff's potato crop was even a partial failure.

The plaintiff claimed at the trial a breach of the defendant's

contract for the sale of ten tons of 8-16-17 Albatros fertilizer, and no more. Regardless of the allegations of the declaration, the case was tried on the theory that this was the gist of his action, and evidence on that issue was admitted without objection. The verdict can not be set aside on the defendant's contention, first advanced here, that there was a variance between the contract declared upon and proved. On motion after verdict, this objection comes too late. *Brown* v. *Reed*, 81 Me., 158, 163, 16 A., 504.

The defendant not only warranted the fertilizer which he sold the plaintiff generally to be 8-16-17 mixture, but, as required by law, that guaranty was stamped on each and every bag in which it was delivered. R. S., Chap. 41, Sec. 12. If any bag did not contain this ratio of chemical ingredients, its fertilizer content was adulterated within the provisions of R. S., Chap. 41, Sec. 18, and the plaintiff is entitled to recover in this action the money value of his loss resulting from its use. *Heal* v. *Fertilizer Works*, 124 Me., 142, 126 A., 644. The damages recoverable are the difference between the crop actually raised and the crop that might have been raised had there been compliance with the contract. *Philbrick* v. *Kendall*, 111 Me., 198, 203, 88 A., 540. On this record, however, damages are limited to the failure of the crop planted with the ten-ton lot of fertilizer.

The issues of fact and applicable rules of law involved in this case, we must assume, were clearly and properly presented to the jury. A careful and thorough examination of the entire record discloses no ground upon which the verdict can be set aside on the motion.

## EXCEPTION:

The defendant reserved an exception to the introduction of the analysis of the samples of the fertilizer taken by the plaintiff on the grounds that the contents of the sealers in which they were forwarded were not intact when received by the chemist, and the samples were not taken in the scientific method adopted by chemists, which is by drawing cores from at least ten bags of fertilizer, mixing them together several times and quartering the mixture for analysis. It is true that the record shows that a representative of

the manufacturer of the fertilizer, without the plaintiff's consent, removed a small quantity of the samples from the sealers while they were in transit. But it·is not clear that this tampering with the samples materially varied their chemical ratio. This objection goes to the weight to be given the analysis, not to its admissibility. Nor do we find merit in the contention that the approved method of sampling fertilizer should have been used. This would have established only the average chemical ratio of a remixed ten-bag lot and would have concealed rather than disclosed the lack of guaranteed percentages in the several bags, which is the basis of the plaintiff's complaint. Its use was not appropriate in this case.

*Motion overruled.*
*Exception overruled.*